# PROVIDENCE COUNTY.

——————

DUNNELL MANUFACTURING COMPANY *vs.* GEORGE W. NEWELL, Town Treasurer of the Town of Pawtucket.

Under Pub. Stat. R. I. cap. 42, §§ 10, 11, cap. 43, §§ 11, 12, business corporations having capital owned in shares are taxable only for real estate and such personalty as is described in Pub. Stat. R. I. cap. 42, § 11.

When power to assess for taxation is limited to certain kinds of personalty, the assessment roll must show that the assessment is made only on such kinds.

If an assessment is entire and any part of it is void, the whole is void.

An assessment roll against a manufacturing corporation specified several distinct tracts of realty, and continued: "Personal valuation, 170,000 ; personal tax, 2,266.66."

*Held*, that the assessment on personalty was void.

An action will not lie to recover the amount of taxes illegally assessed and voluntarily paid.

A tax is not paid under compulsion merely because the collector holds a warrant to collect it by levy or distress.

A. paid under protest a tax illegally assessed.

*Held*, that he could recover it.

ASSUMPSIT.   Heard by the court on an agreed statement of facts.

This action was brought to recover the taxes upon personal property assessed by the town of Pawtucket, in the years 1881, 1882, 1883, and 1884, upon the plaintiff and paid by it.   The assessment rolls of the town of Pawtucket for these years show a tax assessed against the plaintiff on several separately specified tracts of real estate, and then simply " personal valuation, 170,000 ; personal tax, 2,266.66."

Pub. Stat. R. I. cap. 42, §§ 10, 11, provide : —

" SECT. 10. · Personal property, for the purposes of taxation, shall be deemed to include all goods, chattels, debts due from solvent persons, money, and effects, wherever they may be ; all ships or vessels, at home or abroad ; all public stocks and securities, except those issued by the government of the United States ; all stocks or shares in any bank or banking association ; in any turnpike, bridge, or other corporation within or without this State, except such as are exempt from taxation by the laws of this State : *provided*, that no shareholder shall be liable to taxation for shares held in any corporation within this State which in its corporate capacity is taxed within this State for an amount equal to the value of its property, or in any corporation without this State which is, or the shares in which are, liable to taxation in the state where such corporation is located ; and *provided*, that no person shall be liable to taxation on personal property, except upon the surplus of the ratable personal estate owned by him over and above his actual indebtedness.

" SECT. 11.   The fixtures enumerated in section three of this chapter ; all picking, carding, spooling, .drawing, spinning, and

reeling frames, dressing and warping machines, looms, tools, and machines of all sorts, propelled by steam or water power, in any factory, machine-shop, print-works, or manufacturing establishment of any kind, and all live-stock and farming tools on farms; shall be taxed to the owner in the town where they are situated, in the same manner as if he resided there."

Pub. Stat. R. I. cap. 43, §§ 11, 12, provide: —

" SECT. 11. The assessors of any town may, by written demand, require any corporation in this State to make return to them in writing, within twenty days after such demand is made, of the amount and par value of the stock owned in such corporation by any stockholder residing in the town represented by such assessors, the name of such stockholder being specified in such written demand; and if any corporation shall refuse or neglect, after such demand, to make such return within the time aforesaid, it shall forfeit the sum of one hundred dollars for the use of the town whose assessors make such demand, to be recovered of such corporation by an action of debt, in the name of the town treasurer of such town.

" SECT. 12. Every corporation which is by law required to make returns to the assessors of any town shall return the par value and the cash market value of the shares of said corporation, and the proportionate amount per share at which its real estate and machinery, if any, were last assessed; and the stockholders in any corporation or national banking association shall be taxed only for the difference between the cash market value of each share by them held, and the proportionate amount per share at which its real estate and machinery, if any, were last assessed."

*January* 30, 1886. DURFEE, C. J. The first question is whether the assessments on the personal estate of the plaintiff corporation, mentioned in the agreed statement, were valid. The corporation contends that the assessments were invalid because it was not taxable for personal estate generally, but only for machinery. Our statutes relating to taxation do not in terms limit the taxation of the personal estate of manufacturing corporations to machinery; but they provide for the taxation of corporate shares to the owners unless the corporation is taxed for an amount equal to the full value of its property. Pub. Stat. R. I. cap. 42, § 10. They also au-

thorize assessors to call upon any corporation in the State for the amount and par value of the stock of any stockholder assessable by them; require the corporation to respond to the calls, giving the par and cash market value of the shares, and "the proportionate amount per share at which its real estate and machinery, if any, were last assessed;" and direct that stockholders shall be taxed "only for the difference in the cash market value of each share by them held, and the proportionate amount per share at which its real estate and machinery were last assessed."    Pub. Stat. R. I. cap. 43, §§ 11 and 12. It is argued that the implication from these provisions is that manufacturing corporations are taxable only for real estate and machinery; for, if they were taxable generally for both real and personal estate, the result would be that the excess over real estate and machinery would be subject to a double taxation, and statutes are not to be construed as calling for a double taxation unless the construction is unavoidable. We think the argument is valid as applied to business corporations having capital owned in shares, unless they happen to have personal estate, besides machinery, which is locally taxable under cap. 42, § 11. It may be objected that it is evidently contemplated in cap. 42, § 10, that such corporations may be taxed for an amount equal to the value of their entire property. The answer is that they may be taxed on their real estate and personal estate of the kinds specified in cap. 42, § 11, for an amount equal to their entire property, or that they may have no personal property except such as is specified in cap. 42, § 11. The answer is not quite satisfactory; but the supposition that it was intended that the assessors should be at liberty to tax corporations for their entire property or not, according to their own option, regardless of any rule or system, is still less satisfactory, and yet that is the alternative. We have come to the conclusion that the plaintiff corporation was taxable in its corporate capacity only for its real estate and for its personal estate of the kinds specified in cap. 42, § 11. And see *American Bank* v. *Mumford*, 4 R. I. 478; *Boston & Sandwich Glass Co.* v. *City of Boston*, 4 Met. 181.

The assessments complained of here extend in terms to both real and personal estate generally. For anything that appears, the assessors may have assessed the plaintiff corporation for its entire

personal estate of every kind. We must assume that they did so assess it, and consequently that they exceeded their authority. Even if the corporation had no personal estate besides the kinds specified in cap. 42, § 11, we could not know that the assessors did not suppose it had other kinds and assess it accordingly. We think that, where the authority to assess is limited to particular kinds of personal estate, the assessment roll ought to show that the assessment was made only on those kinds, the tax-payer being entitled to know that the assessors keep within their jurisdiction. And this is the more plainly so in the case of corporations, because, as we have seen, our statute makes it the duty of a corporation, when asked by assessors, to report "the proportionate amount per share at which its real estate and machinery, if any, were last assessed," — something which it would have no means of knowing if the machinery be not assessed specifically as such. *Whittlesey* v. *Clinton*, 14 Conn. 72; *Goddard* v. *Town of Seymour*, 30 Conn. 394; *Monroe* v. *Town of New Canaan*, 43 Conn. 309; *Dubois* v. *Webster*, 7 Hun, 371, 374. If any part of an assessment is void, the whole is void where the assessment is entire. *Johnson* v. *Colburn*, 36 Vt. 693; *Gerry* v. *Inhabitants of Stoneham*, 1 Allen, 319.

The second question is: Can the plaintiff recover back the taxes paid under the invalid assessment? It is settled that, if a tax-payer voluntarily pays taxes, he cannot recover them back, even if he afterwards discovers an invalidating defect in the assessment. *Sexton* v. *Pepper*, 28 Hun, 31; 2 Desty on Taxation, 791. This is not unreasonable. A tax-payer may be illegally assessed, and yet may not be more onerously assessed than he would be if legally assessed, and therefore, if he pays the tax without objection, it may be properly taken for granted that he intends to waive the objection, the presumption being that he knows the law. In the case at bar, if the stockholders in the plaintiff corporation all reside in Pawtucket, the result to them is the same, whether the personal estate of the corporation be taxed wholly to the corporation, or only partly to the corporation and the rest to them as stockholders. It is therefore no more than fair that a tax-payer, if he intends to take advantage of a defect, should at least object to or protest against the tax when he pays it, so that the assessors may have

notice and correct the defect for the future. In the case ‚at bar the taxes for 1881, 1882, and 1883, were paid without objection and without protest. There is nothing to show that they were not paid as voluntarily as any taxes were paid by any tax-payers in the town of Pawtucket during those years. The plaintiff contends that they were paid under compulsion, because they were paid to a collector having a warrant to collect them by levy or distress. But they were paid before any step was taken or threat made to enforce them by levy or distress. The collector, if the taxes had not been paid, might have proceeded against the corporation by an action at law, in which the corporation would have had full opportunity to contest the validity of the taxes, instead of proceeding by levy or distress. To hold that the payments were compulsory, simply because the collector had his warrant, would be practically to hold that all payments are compulsory, for the collector has no authority to collect without warrant. We think, therefore, that the taxes paid in 1881, 1882, and 1883 must be taken to have been voluntarily paid and that they cannot be recovered back. Cooley on Taxation, 567, 568; *Taylor* v. *Board of Health*, 31 Pa. St. 73. The tax of 1884 was paid under protest. Having been so paid, we think it may be recovered back, though even a payment under protest may, under some circumstances, be regarded as voluntary. 2 Desty on Taxation, 797; *Parcher et al.* v. *Marathon County*, 52 Wisc. 388; *Erskine* v. *Van Arsdale*, 15 Wall. 75; *Baker* v. *City of Cincinnati*, 11 Ohio St. 534. We give the plaintiff judgment for the amount of tax on personal estate for 1884, with interest from payment.

*Claudius B. Farnsworth,* for plaintiff.

*Hugh J. Carroll,* Town Solicitor of the Town of Pawtucket, for defendant.