## WILLIAM W. GODDARD vs. THE TOWN OF SEYMOUR.

*W G*, residing in the state of Massachusetts, by his agent in the town of *S* in this
state, delivered to the assessors of the town a tax list, sworn to by the agent, con-
taining the following item:—" Stock of copper and spelter, in process of man-
ufacture and manufactured, at works formerly occupied by New Haven Copper
Co.; owner's valuation $20,000." The assessors estimated the value of the
property, and entered against the item—" assessors' valuation $40,000." The
latter amount was then entered by the assessors in the grand list, under the head
of " amount employed in trade and merchandizing." The grand list was
sworn to by the assessors and lodged with the town clerk. The agent appealed
to the board of relief for a reduction of the valuation, and the board made a
reduction by the following entry in a book kept for the purpose :—" Deduct
from list of *W G* $10,000." The town clerk then erased the entire entry made
by the assessors from the grand list, and made the following entry against the

Goddard *v.* Town of Seymour.

name of *W G*: "Investment in mechanical and manufacturing operations, $30,000." He did this in good faith, and for the purpose of carrying into effect the action of the assessors and board of relief. Upon the grand list as thus completed the tax was collected by a levy on property. Held, that the assessment was not invalidated by these proceedings.

An assessment list is not a record. The grand list is the only record of the doings of the assessors, and this is not perfected until the board of relief have reviewed it, and made such changes in it as they think proper. The town clerk acts as the assistant of both boards, and properly makes the corrections which the board of relief order.

In a suit brought by *W G* to recover back the tax collected of him upon the above assessment, he claimed that by reason of his non-residence the property was not taxable in this state. Held, that he could not set up this claim after having voluntarily submitted the property to the jurisdiction of the assessing officers.

Held also that he was not to be regarded as having submitted the property to their jurisdiction to the extent merely of his own valuation inserted in the list, ($20,000,) but as having submitted it to their jurisdiction for the purposes of full assessment and taxation.

The statute requires that selectmen shall make out rate bills *under their hands;* stating the amount which each person is to pay, and shall apply to a justice of the peace to issue a warrant for the collection of the tax. The form of the warrant prescribed by the statute contains a reference to the rate bill as *annexed* to the warrant. Held, that the rate bill must be signed by the selectmen, and that if it is not the warrant is void.

A demand by the collector is not necessary to make the tax *due.* Such a demand is necessary before a levy, but is not a condition precedent of the duty of the tax-payer to pay.

Where a tax has been legally laid and assessed, but has been collected by proceedings that were irregular and invalid, the tax-payer can not recover the money back from the town in an action of general assumpsit. That action is an equitable one, and it having been the duty of the tax-payer to pay the tax without compulsion, it is equitable that the town, having received the money, should retain it.

And in that action there must be strictly a right to the money itself. Where then land of the tax-payer has been sold on a void warrant and the money paid by the purchaser to the collector and by the collector to the town, the money, if it could not be retained by the town, would be that of the purchaser or collector, and not of the tax-payer.

Where a person has paid a tax voluntarily, though in ignorance of the invalidity of the proceedings under which it is demanded, he can not recover back the money.

GENERAL assumpsit, to recover the amount of two taxes collected of the plaintiff, upon proceedings claimed to have been irregular. The case was reserved by the superior court, upon a report of the facts by an auditor, for the advice of this court. The facts are sufficiently stated in the opinion.

*H. B. Munson*, for the plaintiff.

*C. R. Ingersoll*, for the defendants.

DUTTON, J. The plaintiff, a resident of Boston, seeks to recover from the town of Seymour, in the equitable action of general assumpsit, money which he claims in justice belongs to him. He relies on the following leading facts. In October, 1859, he, by his agent, delivered to the assessors of the town a list of his personal property. From any thing which appeared on it it could not be inferred that he was not an inhabitant of Seymour. It contained as an item, "Stock of copper and spelter in process of manufacture and manufactured, and coal, at works formerly occupied by New Haven Copper Company; $20,000;" this sum being placed under the head in the printed list of "Owner's valuation." The works referred to were located in the town of Seymour. The list was sworn to by the agent.

The assessors took the list and inserted in it, opposite to the figures "$20,000," the figures "$40,000," under the head of "Assessors' valuation." They then entered it in the grand list for that year, and set in it opposite to the plaintiff's name this same sum of $40,000, under the head of "Amount employed in trade and merchandizing." In this condition the grand list was sworn to by the assessors and lodged with the town clerk. It then came under the supervision of the board of relief. The same agent appeared before them to get a reduction of the valuation, and after a hearing they decided to take off $10,000 from the assessment, and entered this abatement in a book in which they kept an account of their own proceedings. In this book the following entry was made by them:— "Deduct from list of William W. Goddard $10,000." Soon afterwards the town clerk erased the figures "$40,000," which as has been stated were inserted under the head of "Amount employed in trade and merchandizing," and inserted under the next head of "Investments in mechanical and manufacturing operations," the figures "$30,000." This he did

in good faith, to carry into effect the action of the assessors and board of relief.

As the question whether these proceedings are legal or not, and whether they are sufficient for the levy of a tax against the plaintiff, is one of the most important in the case, we will consider it before proceeding further with the statement of the case.

Although the making up of the grand list was attended with some irregularities, we believe nothing was done which requires us to pronounce it illegal and void. Although such a list is in the nature of a record, it can not be expected that it should be made with technical accuracy. In *Adam* v. *Litchfield*, 10 Conn., 131, Church, J., with great propriety remarks : " Assessors and boards of relief are selected for their integrity and sound judgment in the valuation of property, rather than for any supposed technical accuracy in the forms of business. It is enough that assessment lists are made up with so much certainty that tax-payers may know for what and for how much they are to be taxed, and that the taxes to be levied may be duly apportioned." The plaintiff in this case would stultify himself by claiming that he could not ascertain as much as this.

It has been urged with a great deal of pertinacity, that an assessment list is a record, which is vitiated by any alteration after it is completed; and that the changes which were made by the town clerk rendered it void, so far as the plaintiff is concerned. The statute makes the grand list made out by the assessors the only record in these proceedings. This is not perfected till it has passed through the hands of the board of relief. They do not make up an independent list, but merely correct, according to their views of justice, the list which has already been signed and sworn to by the assessors. This we believe is the universal practice, and the statute makes no provision for any other course. From the situation and duties of the town clerk, he is able to aid both the assessors and board of relief, and is uniformly called on to assist both. If the board of relief keep a memorandum of their own proceedings, it is not a record, and if they do not themselves

make the corrections in the grand list which are required by them, they expect the town clerk to do it. The list as finally lodged with the town clerk may reasonably be supposed to have come within the knowledge and to have the approbation of both of these boards.

In pursuance of this general understanding and practice, the clerk in this instance in good faith merely made the grand list conform to the views of the assessors and board of relief. He did indeed put the amount under a more appropriate head, doubtless with the sanction of the other officers, but the change would not have misled or injured the plaintiff, and he ought not to complain of it.

But it is urged that the plaintiff was not an inhabitant of the state, and therefore not liable to be taxed on his personal property. It appears however that his authorized agent made out and presented the list. If he suffers, therefore, it is owing to his own negligence and folly. He has subjected the officers of the town to trouble in examining and valuing his property as liable to taxation, and he is estopped from denying its liability. He can not be instrumental in putting money into the treasury of the town and then maintain a suit to recover it back.

But it is claimed that, as the plaintiff valued his property in his list at $20,000, he admitted a liability to taxation only to that extent, and that at furthest he ought not to be estopped beyond that amount. In answer to this claim it is sufficient to say that the statute does not require any valuation of property by the tax-payer. If made therefore it is mere surplusage, and is only of use to the assessors as an indication, though generally a very unreliable one, of the value of the property. When a property owner hands in a list to the assessors, he gives them of course complete jurisdiction over it, to as full an extent as they have over any other list.

The auditor, to give the plaintiff every possible opportunity for relief, has unnecessarily reported various facts, tending, as is claimed, to show that the property was in reality worth much less than the assessment, and that the assessors and board of relief acted negligently and even fraudulently in mak-

ing their estimates. If this question was open for investigation we should scrutinize very closely the evidence from which any such inference is to be drawn. The law imposes upon these officers duties which they can not possibly discharge to the satisfaction of all. Unfortunately the class of men who will if possible, by any means right or wrong, exempt their property from just taxation, is large. But it is enough for the present purpose to say, that the law has constituted these officers, and not judges of the superior court, the tribunal to determine the valuation of taxable property.

No objection it is believed was made to the list of 1860 which has not been sufficiently answered. It is not denied that taxes were legally levied on both of these lists, if the lists themselves were valid.

We will now proceed to the remaining history of the case. To collect these taxes, rate bills, not signed, were attached to warrants of the usual form, signed by a justice of the peace. The tax on the list of 1859 was without objection paid to the collector holding the warrant, by the plaintiff, he not being aware that there was any defect in it. The plaintiff objected to the payment of the other tax on the ground that the whole proceedings were illegal, and it was levied on his personal property and the money to pay it raised by the sale of the property. In both instances the money was paid by the collector into the treasury of the town.

The important question in this part of the case is, whether the warrants were valid. We shall see that, so far as this particular suit is concerned, this point is immaterial. But to taxpayers and tax-collectors it is a vital question, and we think it ought to be settled. We are clearly of opinion that such warrants, which we fear have been frequently used, are void. The statute requisition is too explicit to admit of any serious doubt. The language is, " Collectors duly appointed shall have power to collect the taxes for which a lawful warrant shall be given them." Stat., Comp. 1854, p. 860, sec. 57. To show what a lawful warrant is, the statute provides in section 52d as follows:—" The selectmen of towns and the committee of other communities shall make out rate-bills *under*

*their hands* containing the proportion which each individual is to pay, according to the list last made and completed in the mode required by law ; and shall apply to some justice of the peace to issue a warrant for collecting such tax, and such justice shall issue such warrant." Such care taken by the legislature to specify what shall be a lawful warrant, clearly implies that one not having these requisites would not be lawful. It has been suggested that, in the absence of proof to the contrary, it might be presumed that a rate-bill signed by the selectmen was lodged with the justice, and that the statute does not require that this should be delivered to the collector with the warrant. But the form of the warrant prescribed by the legislature in section 63d, containing the expression " *annexed list*," disposes of this claim.

There are sound reasons for the requirements of the statute. The justice who is called on to sign the warrant, and who might be held responsible for thousands of dollars if it was illegal, has no knowledge of the correctness of the list on which the warrant is to issue. Safety to him therefore requires that it should be authenticated by the signatures of the selectmen. The tax-payers are entitled to the same assurance that their taxes are correct It would be a great hardship to them, and a great annoyance to the town clerk, if each tax-payer to satisfy himself was required to go personally and examine the grand list. In the case of " other communities " besides towns, mentioned in the statute, a rate-bill must be made out by selecting from the grand list of the town the property that is taxable in a particular city, borough, school district, &c. This is sometimes attended with much difficulty and ought to be done by persons both qualified and authorized to do it. The only proper evidence that the rate-bill was made by them would be their signatures subscribed to the rate-bill annexed to the warrant.

The other objections to the proceedings are of no general interest and need not be noticed.

It is further claimed however, that if the taxes were legally laid and collectible, still that they were not due, inasmuch as

they had not been demanded by a collector having a legal warrant.

This, in our opinion, is attempting to make too nice a distinction. Although a demand is necessary before a levy can be lawfully made, still the tax is due as soon as legally imposed. It is immaterial whether it is *debitum in presenti* or *debitum in futuro.* Each tax-payer is under both a legal and moral obligation to bear his proportion of the public burdens. The proceedings in making an assessment are merely a mode of ascertaining his just share. The time when he shall become liable to be called upon for it, is immaterial, so far as the question to whom the money belongs is concerned.

The only remaining question is, whether the plaintiff, who has voluntarily paid one of these taxes, and has had his property sold to pay the other, can recover any part of it back. The fact that the first was a voluntary payment, although in ignorance of any defect in the proceedings, may well be considered a sufficient objection to a recovery so far as that is concerned. *Sheldon* v. *South School District,* 24 Conn., 88. But there is a common objection to both which is fatal. The plaintiff can not recover any money in this action which is not, as between him and the defendants, in equity and good conscience his. He alleges in the declaration that " the defendants were indebted to the plaintiff for money had and received by the defendants to the use of the plaintiff." If, as the plaintiff contends, the sale of his property was not legal but wholly void, then the purchaser acquired no title to the property, and the title now remains in him, and in that case the money which was paid by the officer into the town treasury was not the plaintiff's money, but the money either of the officer or of the purchaser. So far as it is to be regarded as the money of the plaintiff that was paid in, as it was in fact in one of the payments, it was money which it was the duty of the plaintiff to pay without being compelled, and the town having received it may equitably retain it. Courts have gone great lengths in holding that the ground of recovery in this action is the equitable right of the plaintiff to the money itself, without regard to the manner in which the defendant obtained it. However

tortiously it may have come into his hands, the defendant can in this form of action set the plaintiff at defiance if he has the best right to it. *Eddy* v. *Smith*, 13 Wend., 488. *Lime Rock Bank* v. *Plimpton*, 17 Pick., 159. *Le Breton* v. *Peirce*, 2 Allen, 8.

As the town of Seymour is justly entitled to these taxes, judgment must be given for the defendants.

In this opinion the other judges concurred.