DANIEL H. TOLMAN

*v.*

SAMUEL B. RAYMOND, County Collector.

*Opinion filed April 24, 1903.*

1. TAXES—*tax presumed to be legal and just—burden of proof.* One seeking to enjoin the collection of a personal property tax must overcome the presumption that the tax is legal and just.

2. SAME—*taxable situs of profits from loan agencies in different States.* Profits drawn out of loan agencies in different States, owned and operated by one party and deposited in a central auditing office in a foreign State, are taxable at the residence of such party in this State, notwithstanding the principal sums upon which such profits are earned are re-invested by his agents and kept continuously in other jurisdictions as a part of the capital of the business.

3. SAME—*when party cannot complain of assessment in different towns.* One who voluntarily presents a schedule of property for assessment in the town where he resides and another in the town where he has his business office cannot insist it was error to extend taxes against him in both towns, where different property was assessed in each town.

APPEAL from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

M. PAUL NOYES, for appellant.

EDWIN W. SIMS, County Attorney, and WILLIAM F. STRUCKMANN, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On a hearing before the chancellor in the superior court of Cook county the bill in chancery filed by the appellant to restrain the appellee collector from enforcing the collection of certain personal property taxes appearing against the appellant on the tax collector's books of Cook county for the year 1901 was dismissed for want of equity, and this appeal has been perfected from that decree.

It appeared from the evidence that the appellant resided in the city of Chicago; that his residence was in

the north town and his place of business in the south town; that he delivered to the board of assessors for the north town a schedule, verified by his oath, purporting to set forth all personal property belonging to or controlled by him on the first day of April, 1901, subject to taxation in said north town; that in this schedule he listed for taxation one piano of the value of $50 and certain articles of household furniture listed at the value of $550, a total valuation of $600; that he delivered to the board of assessors a schedule, verified by his oath, purporting to set forth a list of all personal property owned or controlled by him subject to taxation in the south town on April 1, 1901; that in this schedule he listed moneys on hand in the sum of $400 and office furniture in the sum of $100, a total of $500; that the board of assessors refused to accept and confirm the schedule of the south town property, and fixed the assessable value of his property in said south town for the year 1901 at the sum of $100,000; that the board of review, after notice to the appellant, increased the valuation of his personal property in the north town to the sum of $50,000, and that the board of review adopted a general order that the valuation of all personal property assessed for taxation in the south town should be increased ten per cent, whereby the valuation of appellant's personal property for assessment in said south town was fixed at the sum of $110,000.

It appeared from the proofs that the appellant was engaged throughout the United States and Canada in the business of making loans of money; that he owned and maintained offices for the purpose of making such loans to salaried people in forty-three cities in the United States and Canada, one of said offices being in the city of Chicago; that he resided in the north town of Chicago, in Cook county, Illinois, and had his business office in the south town of Chicago. It appeared the board of review obtained information to the effect that the appel-

lant had $200,000 loaned in Cook county, and ascertained that he was rated in financial circles as being worth $1,000,000 or more. He testified that the main office and headquarters of the business of making loans which he prosecuted in said forty-three cities was in Brooklyn, N. Y., and that the office in Chicago was merely a branch office, transacting not more than one one-hundred-and-fiftieth part of his entire business; that the business of each of the offices in the several cities was conducted by agents employed by him, who made loans, collected the same and re-invested the principal and interest in the same city, and collected and re-loaned again, making a continuous business at each agency, and keeping the money and credits belonging to the office in each city permanently engaged in the business of that agency; that the capital employed in each of said cities was liable to taxation in such cities, respectively, and was so taxed in each of said cities. He testified he had no personal property in the north town other than that which appeared upon the schedule prepared by him for that town, but admitted that on April 1, 1901, he had moneys and credits to the amount of $5295.03 liable to assessment for taxation in the south town which he did not include in the schedule of his taxable property sworn to and presented by him to the board of assessors.

Counsel for appellant admits that it is the general rule that the taxable *situs* of moneys and credits is the domicile of the owner, but insists the evidence brings the property of appellant which is employed in the business of loaning money in different cities of the United States and Canada within an exception to this rule, which is, that where such moneys or credits are permanently employed in business in other jurisdictions having the power of taxation, and such moneys and the written evidence of the credits are kept continuously in such other jurisdictions as a part of the capital invested in such business, then the taxable *situs* of such moneys

and credits is in the jurisdiction where the business is transacted. Counsel insists it was established by the evidence in this case that the moneys and credits which were assessed by the board of assessors and the board of review, except as returned by appellant for assessment, and also except such sum admitted by him to have been omitted in making the schedule for the south town, were those so permanently employed in business at the different agencies in the said cities in the United States and Canada outside of the State of Illinois, and that such moneys and credits did not have their *situs* for taxation at the domicile of the appellant in Cook county; that under the rulings of this court in *Hayward* v. *Board of Review,* 189 Ill. 234, *Dutton* v. *Board of Review,* 188 id. 386, and *Maxwell* v. *People,* 189 id. 546, such property was exempt from taxation in this State, and that, appellant having tendered to pay all taxes levied upon such of his property as was subject to taxation in this State, the chancellor erred in refusing to restrain the collector from enforcing further payment of taxes by appellant.

The presumption obtained that the tax as levied and extended against the personal property of the appellant was legal and just. (*People* v. *Keener,* 194 Ill. 16.) The burden of showing such matters as would avail to avoid the tax was upon the appellant. He appeared as a witness, but did not deny that he was the owner of personal property, moneys and credits in an amount equal to that assessed against him. He did not deny that the information to the effect that he was worth $1,000,000 was correct. He testified that he was the sole owner of the capital invested in the forty-three loan agencies in the United States and Canada and that the profits of all such agencies belonged to him, but he did not state what his personal property was worth or what sum he had invested in the different agencies. The evidence left no doubt but that he was a man of very great wealth, and that in the aggregate he owned moneys and credits far

exceeding in value the amounts for which he was assessed for taxation in Cook county. Though he testified that the moneys belonging to him and employed by him, through his agents, in the business of loaning money in other cities than the city of Chicago, were, when collected by such agents, again re-invested as a part of the permanent capital of the agency, he further testified that he employed a number of agents whose duty it was to visit and audit the accounts of each office about once in six months, and that a central or general auditing department was maintained in Brooklyn, N. Y., and that the profits, when drawn out of any agency, were remitted to this auditing department in Brooklyn. It therefore clearly appeared that all of the moneys of appellant were not kept employed in the business of the different agencies, but that he kept a depository in Brooklyn where profits arising from the business of any of the agencies and withdrawn from such business were kept. He testified he was the sole owner of all the profits arising from the business of all the various agencies. The money or credits constituting the profits which were withdrawn from business at the different agencies and deposited in the auditing department at Brooklyn belonged to the appellant and were taxable in Cook county, where the appellant resided. It was within the power of the appellant to have disclosed what sums were so lodged with the auditing department in Brooklyn on the first day of April, 1901, but he did not do so. The chancellor could not know what sums of money belonging to the appellant were then in his auditing department, and, aside from all other questions in the case, was for this reason justified in giving force and effect to the legal presumption that the action of the board of review was correct and that the tax sought to be enjoined was just and legal. Furthermore, the general effect of the facts disclosed by the proof was to support, rather than overcome, the presumption.

The appellant having voluntarily presented a schedule of property for assessment in the north town of Chicago, where he resided, and another schedule of property for assessment in the south town, where he maintained an office, cannot be heard to urge it was error to extend taxes against him in both towns, it being clear that different property was assessed in each town and that there was no double taxation.

The decree is affirmed.                *Decree affirmed.*