A. SLIMMER, Appellant, v. CHICKASAW COUNTY, Appellee.

**Taxation:** RECOVERY OF TAXES VOLUNTARILY PAID: ESTOPPEL. Taxes illegally or erroneously paid, although voluntarily and without protest, may be recovered by the tax payer in virtue of Code section 1417; but one who voluntarily submits his property to the jurisdiction of a tax officer, asking that it be assessed by him, is estopped thereafter from denying that it was not assessable or that the authorities had jurisdiction, especially where action has been taken by the assessment district on the strength thereof.

*Appeal from Chickasaw District Court.*—HON. A. N. HOBSON, Judge.

TUESDAY, DECEMBER 15, 1908.

ACTION at law to recover taxes alleged to have been erroneously and illegally paid by and exacted from plaintiff by the defendant county. The case was tried to the court as in equity, resulting in a decree dismissing the petition, and plaintiff appeals.—*Affirmed.*

*Sager & Sweet* and *Springer, Clary & Condon,* for appellant.

*Smith & O'Connor,* for appellee.

DEEMER, J.—At the time of the commencement of this suit, and for many years prior thereto, plaintiff was a resident of Waverly, in Bremer County. His nephew, Lipman Loser, was at all times material to our inquiry a resident of Nashua, in Chickasaw County, engaged in the banking and loan business. About the year 1898 plaintiff concluded to retire from active business, and pursuant thereto dissolved a partnership of which he had theretofore been a member, largely converted his assets into moneys and credits, and transferred a large amount thereof to defendant county, placing the same in the hands of his nephew, Loser, and giving him the full management and control thereof. To his nephew he executed an ordinary power of attorney authorizing him

In the transaction of all my business affairs and the management of my interest in all my personal and real property wherever the same is situated with power to sell and convey the same and give lawful deeds and conveyances for the same or any part thereof for me and in my stead for such terms as he may see fit and proper; also to collect all or any mortgages either real or chattel either by legal proceedings or settlement on such terms as he shall deem best and to receipt for and release the same as fully as if done by myself. I also authorize him as my attorney hereby appointed, to close out, wind up or diminish all or any of my partnership interests or in his

discretion increase the same as he deems it advisable. And I hereby authorize and empower my said attorney Lipman Loser to act for me and in my stead in all matters relating to any contracts made by me, either by extending or closing up the same as he may deem best and in any other of my matters of every name and nature not herein enumerated, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation hereby ratifying and confirming all that my said attorney or his substitutes shall lawfully do or cause to be done by virtue hereof.

Shortly thereafter, and in the year 1897, he entered into a contract with Loser, the material parts of which read as follows:

Contract made this 10th day of December, 1897, between A. Slimmer of Waverly, Iowa, and Lipman Loser of Nashua, Iowa, Witnesseth: That the said A. Slimmer, having heretofore placed in the possession and under the control and management of the said Loser, certain moneys, notes, mortgages and credits evidencing and securing the payment of moneys belonging to the said Slimmer, for the purpose of investing and loaning the same, collecting the amounts due thereon, re-investing the same, and so employing the said funds at interest, at the best safe and obtainable rates, of which securities and funds the said Loser now has the possession; it is agreed by and between the parties in relation thereto and in relation to the business affairs of the said A. Slimmer, that the said Loser shall make, control and manage the said funds and securities and duly account therefor to the said Slimmer, and at the request of the said A. Slimmer he shall attend to any other business of his that he may be called upon. The compensation for all such services under this contract shall be reasonable in proportion to the amount of services heretofore and hereafter to be performed, and shall be settled for by December 1st of each year, and at such time each party has the right to abrogate this agreement. In case of

a disagreement as to the compensation for services rendered as aforesaid between said Lipman Loser and A. Slimmer, each party shall select one person, and the two so chosen shall select another and the decision of the three as to compensation for the labor performed by the said Lipman Loser shall be final.    A. Slimmer, Lipman Loser.

Something like $300,000 in moneys and credits were transferred to Loser pursuant to this power of attorney and contract, and Loser managed and controlled the same down to about the year 1905.    With plaintiff's knowledge and assent, and without any suggestion from the county authorities other than the presentation of blanks to Loser for the return of this assessment, Loser listed the property, moneys, and credits turned over to him by plaintiff for assessment in defendant county and in the town of Nashua. This was done for more than seven years without protest of any kind, save as to some road and water taxes, which, at plaintiff's request, were canceled.    Loser voluntarily paid the taxes levied pursuant to these assessments, and received credit for the amount thereof in his settlement with plaintiff.    Plaintiff, through his agent, Loser, in effect requested the officials of defendant county to make the assessment and to levy the tax, and plaintiff himself in his conference with the city officials of the town of Nashua represented that his moneys and credits then in the hands of Loser were assessable in Nashua, where Loser lived, and the only complaint he made was of the fact that the levy was not decreased by reason of his taking so large a sum of money into the assessment district.    He also claimed, however, that his property was not subject to taxation for road and water purposes, and at his request these taxes were canceled and some returns made to him by reason of collection thereof having been made. Both · plaintiff and his agent, Loser, believed that these moneys and credits were assessable in defendant county, and contrary to the habit of many men of means plaintiff in-

sisted that all his property in the hands of his agent should be taxed, and both he and his agent made statements and returns of the amount thereof to the assessor. In other words, believing that the property was assessable in defendant county and in the town of Nashua, and believing that all property subject to assessment should bear its proper proportion of the public burden, they voluntarily and on their own motion caused the same to be assessed in defendant county, and thereafter paid the tax levy, without any protest whatever, believing that they were performing their duty as good citizens and with intent to bear their part of the burdens of taxation.

Pursuant, no doubt, to the holdings of this court in *German Trust Co. v. Board,* 121 Iowa, 325, and *Snakenberg v. Stein,* 126 Iowa, 650, the authorities of Bremer County concluded that plaintiff's personal property was assessable in that county, no matter where it might be located; and so. in the year 1905 they commenced action against plaintiff in the district court of Bremer County, seeking to collect from him taxes for the years 1901, 1902, 1903 and 1904, upon the moneys and credits which he had left with Loser in Chickasaw County, and upon which taxes had been paid in that county for these same years. This case never went to trial, but was settled and compromised by plaintiff paying to the county treasurer of Bremer County the sum of $10,500. After the action was commenced in Bremer County, plaintiff commenced this suit against the defendant Chickasaw County, the independent school district of Nashua, and the town of Nashua to recover the amount of taxes he had paid upon the moneys and credits in the hands of Loser for the years 1900 to 1904, inclusive. The school district and the town appeared and filed demurrers to the petition, and these demurrers were sustained. The defendant Chickasaw County answered, and upon the issues joined the case was tried to the court, resulting in a judgment dismissing the petition.

The correctness of the ruling on the demurrer of the school district and of the town is not now before us, and the sole question upon this appeal is the right of plaintiff to recover taxes paid defendant county during the years hitherto mentioned.

The action is bottomed upon section 1417 of the Code, which, so far as material, reads as follows: "The board of supervisors shall direct the treasurer to refund to the taxpayer any tax or portion thereof found to have been erroneously or illegally exacted or paid, with all interest and costs actually paid thereon." Under this section it has been held in many cases that a taxpayer may by action recover back taxes erroneously or illegally exacted or paid, even though paid voluntarily and without protest. *Richards v. Wapello County,* 48 Iowa, 507; *Dickey v. Polk County,* 58 Iowa, 287; *Lauman v. Des Moines,* 29 Iowa, 310. At common law no such action would lie, for the reason that taxes voluntarily paid, although erroneous or illegal, could not be recovered back. *Lindsey v. Boone Co.,* 92 Iowa, 86; *H. L. & B. Co. v. Marion,* 110 Iowa, 468; *Newcomb v. Davenport,* 86 Iowa, 291. So that, if there be any right of action at all, it exists by reason of the statute quoted.

Counsel contend that, notwithstanding our decision in the *German Savings Bank* and *Snakenberg* cases, the moneys and credits involved in this action were properly assessable in the defendant county under section 1317 of the Code. There is much which might be said in favor of this proposition, but we do not find it necessary to decide that question.

Again, it is argued in support of the finding of the trial court that the error in this case was simply a mistake of law on plaintiff's part, and that this is not such an error as is contemplated by section 1417 of the Code. *Dubuque, etc., Co. v. Board,* 40 Iowa, 16, and *Kehe v. Blackhawk County,* 125 Iowa, 549, lend support to this view, but the decision need not be placed on that ground,

for in our opinion there is a better one upon which to plant it. Defendant pleads that plaintiff by reason of his conduct is estopped from now saying that his property was not assessable in Chickasaw County. In support of this plea, it not only relies upon the facts above stated, but upon the further fact that debts were incurred, estimates made, and money paid out on the strength of the moneys and credits being assessable in Chickasaw County, as plaintiff, not only through his agent, but personally, represented. It is the almost universal voice of authority that where one voluntarily submits his property to the jurisdiction of the assessing officer, asking that it be assessed by him, he is thereafter estopped, especially when action has been taken by the county or any of the assessment districts on the strength thereof, from denying that the property was assessable, or from saying that the authorities had no jurisdiction thereof. See, as supporting this wholesome rule: *Hamacker v. Bank*, 95 Wis. 359 (70 N. W. 295); *Tolman v. Raymond*, 202 Ill. 197 (66 N. E. 1086); *In re Bank of Marion*, 153 Ill. 516 (39 N. E. 118); *Goddard v. Town*, 30 Conn. 394; *Ives v. North Canaan*, 33 Conn. 402; *Phelps, etc., Co. v. Board*, 84 Iowa, 610; *Rodger v. Gaines*, 73 Ala. 218. See, also, valuable note to *Inland Co. v. Thompson*, 7 Am. & Eng. Ann. Cas. 866.

From the facts above recited it is apparent that every element of estoppel is present in this case, and that it is clearly within the rule announced in the cases cited. As said in the *Goddard* case, *supra*, "He (plaintiff) can not be instrumental in putting money into the treasury of the town and then maintain a suit to recover it back." Plaintiff's agent made out and presented a list of moneys and credits which he represented were taxable in defendant county, and in effect asked the officials thereof to assess the same. Plaintiff knew of and assented to this, and, although both may have been mistaken as to the law, they

can not now recede and claim that the property was not taxable in the defendant county. In *Phelps v. Board, supra*, we said: "Having consented to an assessment in the sum fixed by the district court, we think it is now too late for appellant to raise the question of its liability to any assessment." This is virtually the holding in the *Kehe* case, *supra*. There the tax was paid by Kehe on the assumption that his property was assessable, and, after discovering his mistake, he sought to recover the same from the county. This we said he could not do. Where one voluntarily hands in to the assessor a list of property which he represents is liable to assessment, and thereafter pays the taxes levied which are used and expended by the county, he can not thereafter change front and say that the property was not assessable for any amount. As it is the duty of assessors to list for taxation all property which may be presented to them as subject to taxation, the owner can not, after the assessment has been made and taxes paid, recover the amount back on the theory that the property is not subject to taxation in the district where returned. Section 1417 does not cover such a case, and, if it applies to erroneous taxation at all, it should not be held to relieve one who voluntarily and of purpose presents his property for taxation, and thereafter, and after having paid the taxes, changes his mind and concludes that the property was not subject to taxation. On the theory of an estoppel the case is not difficult of solution.

We reach the conclusion that the plaintiff is estopped from saying that his property was erroneously assessed, and the judgment must be, and it is, *affirmed*.