TOY NAT. BANK OF SIOUX CITY, IOWA, v. NELSON, County Treasurer, et al. IOWA JOINT–STOCK LAND BANK OF SIOUX CITY, IOWA, v. SAME. SECURITY NAT. BANK OF SIOUX CITY, IOWA, v. SAME.

Nos. 695–697.

District Court, N. D. Iowa, W. D.

Feb. 5, 1930.

262

Edwin J. Stason and Karl J. Knoepfler, both of Sioux City, Iowa, for plaintiffs in first and second cases.

E. M. Corbett and C. M. Corbett, both of Sioux City, Iowa, for plaintiff in third case.

O. T. Naglestad and A. R. Strong, both of Sioux City, Iowa, for defendants.

SCOTT, District Judge.

The three foregoing entitled cases were simultaneously brought against common defendants to recover sums of money paid yearly as taxes over a period of years 1923 to 1929, inclusive. The allegations of the respective petitions are the same in substance, mutatis mutandis. The following statement of material and controlling facts alleged in the several petitions is taken from the plaintiffs' brief. Comparison with the petitions themselves convince me that the statement is a fair one, and sufficient to serve as a basis for consideration of the legal questions presented by the demurrers filed in each case by the defendants.

"Facts Admitted by Defendants' Demurrer.

"The defendants admit by their demurrer certain facts properly alleged, including the following:

"1. The plaintiffs were taxed at the consolidated rate of approximately 150 mills on the dollar for the years 1923, 1924, 1925, 1926, 1927, 1928 and 1929, while other 'moneyed capital' in substantial competition with the plaintiffs was taxed at the rate of 5 mills on the dollar for 1923, and 6 mills on the dollar for 1924, 1925, 1926, 1927, 1928 and 1929.

"2. The plaintiffs were not permitted to deduct for those years, from the valuations of their stocks in the plaintiffs' institutions, the individual indebtedness of the stockholder while the owners of other 'moneyed capital,' which was in substantial competitions with the plaintiffs, were permitted to make such deductions.

"3. For a number of years, including those of 1923–1929, inclusive, it had been the practice of the assessors and the policy of the board of supervisors of the defendant county to knowingly and intentionally assess 'other moneyed capital' in the form of credits, and to collect taxes computed thereon, at the rate of 5 mills for 1923 and 6 mills on the dollar for 1924, 1925, 1926, 1927, 1928 and 1929, irrespective of whether all or any part of such credits was invested in securities so as to come in substantial competition with the business of national banks and joint stock land banks in the loan market.

"4. That during the said years the defendants as taxing officers assessed all intangible property, subject to taxation, either as national, state and savings banks and loan and trust company stock, or as credits; that in the latter class of securities was included all securities designated as 'other moneyed capital' in Section 5219 of the United States Revised Statutes (12 USCA § 548); that said method of assessing has been pursued not only in Woodbury County, Iowa, but throughout the State, and said method has been repeatedly and 'wrongfully sustained by state courts of Iowa; that the said credits so taxed at 5 mills on the dollar for 1923, and 6 mills on the dollar for the years 1924 to 1929 inclusive included all 'moneyed capital' in Woodbury County, Iowa, as that term is used in said section of the Revised Statutes, to the approximate amount of $5,000,000, which said 'moneyed capital,' during said period was at all times in constant, active and substantial competition with the normal and ordinary loan and investment business of the plaintiffs."

The contentions of the plaintiffs are that the system and practice of assessments intentionally carried out by the defendants resulted in discrimination against the shares of stock of the plaintiff banks, and imposed a greater rate than was assessed against other moneyed capital in the hands of individual citizens of the state, coming into competition with the business of national banks. That the taxes imposed were not uniform upon such moneyed capital and upon the shares of stock in such banks, and therefore the imposition of such taxes contravenes that part of section 5219 of the Revised Statutes of the United States (now section 548, Title 12, United States Code [12 USCA § 548]), which prohibits a state from taxing the shares in national banks at a greater rate than is

assessed upon other moneyed capital in the hands of individual citizens of such state, coming into competition with the business of national banks, and that such taxes are illegal and void; and contravenes that part of the Fourteenth Amendment to the Constitution of the United States which provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

It also contended that the statutes hereinafter set out are unconstitutional in so far as they relate to the taxation of shares in national banks and other moneyed capital in competition therewith, for the reasons assigned for the illegality of the tax.

The following are the statutory provisions of the state of Iowa (Code 1927) under which the taxes in question were imposed:

"6984. *"Credits" defined.* The term credit, as used in this chapter, includes every claim or demand due or to become due for money, labor, or other valuable thing, every annuity or sum of money receivable at stated periods, and all money or property of any kind secured by deed, title bond, mortgage, or otherwise. ÷ * * "

"6985. *Moneys—credits—annuities— bank notes—stocks.* Moneys, credits, and corporation shares or stocks, except as otherwise provided, cash, circulating notes of national banking associations, and United States legal tender notes, * * * notes, including those secured by mortgage, accounts, contracts, for cash or labor, bills of exchange, judgments, choses in action, liens of any kind, securities, debentures; bonds other than those of the United States, annuities, and corporation shares or stocks not otherwise taxed in kind, shall be assessed and, excepting shares of stock of national, state, and savings banks, and loan and trust companies, and moneyed capital as hereinafter defined, shall be taxed upon the uniform basis throughout the state of five mills on the dollar of actual valuation, same to be assessed and collected where the owner resides."

"6987. *Bonus bond levy.* Until the soldiers' bonus bonds are retired and paid, there shall be levied and collected upon all property taxed at five mills on the dollar of actual valuation as provided in the second preceding section and additional tax of one mill on the dollar of actual valuation. * * * "

"6988. *Deduction of debts.* In making up the amount of money or credits which any person is required to list, or to have listed or assessed, including actual value of any building and loan shares, he will be entitled to deduct from the actual value thereof the gross amount of all debts in good faith owing by him."

"6992. *Stock and "moneyed" capital denied deduction.* No deduction for debts shall be allowed from· the shares of stock of any state, savings or national bank or loan and trust company, nor from moneyed capital used in competition with banks, within the meaning of section 5219 of the revised statutes of the United States."

"6998. *National and state bank stock— place of assessment.* Shares of stock of national banks and state and savings banks and loan and trust companies, located in this state, shall be assessed to the individual stockholders at the place where the bank or loan and trust company is located."

"7003. *Rule of actual and taxable value.* The assessor from such statement shall fix the value of such stock based upon the capital, surplus, and undivided earnings, at the same ratio of assessed value to actual value as the assessed value of real estate in the taxing district where such bank is located generally bears to its actual value.

"The taxable value of such shares of stock shall be one-fourth of the assessed value and shall be taxed as other property of such taxing district. * * * "

"7005. *"Moneyed" capital.* All moneyed capital within the meaning of section 5219 of the revised statutes of the United States shall be listed and assessed against the owner thereof at his place of business, and if a corporation at its principal place of business, at the same rate as state, savings, national bank and loan and trust company stock is taxed, in the same taxing district, and at the actual value of the moneyed capital so invested."

"7006. *Listing.* The person or corporation using moneyed capital in competition with bank capital shall furnish the assessor upon demand a full and complete itemized sworn statement showing the amount of moneyed capital so used."

"7007—a1. *Liability of corporation for tax.* The corporations described in this chapter shall be liable for the payment of the taxes assessed to the stockholders of such corporations, and such tax shall be payable by the corporation in the same manner and under the same penalties as in cases of taxes due from an individual taxpayer, and may

be collected in the same manner as other taxes, or by action in the name of the county."

Consideration and determination of the legal sufficiency of these demurrers present three major questions:

1. Are these Iowa taxing statutes, in the light of such construction as the Supreme Court of the State has given them, unconstitutional in so far as they apply to taxation of shares of national banks?

2. Do these Iowa taxing statutes, in the light of such construction as the Supreme Court of the state has given them, contravene the prohibition of section 5219, Revised Statutes of the United States (now section 548, Title 12, U. S. Code [12 USCA § 548])?

3. Have the assessing and taxing officials of the state, in executing and applying these statutes, systematically and intentionally discriminated against the shares of stock in national banks so as to impose a greater rate of taxation than was assessed upon other moneyed capital in the hands of individual citizens of the state coming into competition with the business of national banks?

If the third question must be answered in the affirmative, it would seem to follow that section 5219 of the Revised Statutes of the United States (12 USCA § 548) has been contravened, and it is quite possible that proof of a state of facts in support of such proposition would likewise establish the contention that the state through its executive and administrative officials had denied to the citizen concerned the equal protection of the law, thereby violating the Fourteenth Amendment to the Constitution of the United States.

In case any one of the foregoing questions is finally answered in the affirmative, a number of remedial questions arise at once on the record: (a) Have plaintiffs waived their remedy by failing to exhaust some administrative remedy provided by the statutes of the state to be had before some administrative board or tribunal? (b) Have plaintiffs waived their remedy by neglecting at the time of payment of the tax to make proper protest? (c) Is an action at law the appropriate remedy in a federal court to recover a tax unlawfully imposed and exacted?

I will consider the questions just enumerated in the order stated. It is contended by the plaintiffs that the statutes in question are unconstitutional as contravening the equal protection of the law clause of the Fourteenth Amendment. In support of this contention counsel cites and quotes from the following cases: 37 Cyc. 735; People's Gas Light & Coke Co. v. Stuckart, 286 Ill. 164, 121 N. E. 629, 633; Eminence Distillery Co. v. Henry County Board, 178 Ky. 811, 200 S. W. 347, 350; Northwestern Mutual Life Ins. Co. v. Wisconsin, 247 U. S. 132, 38 S. Ct. 444, 62 L. Ed. 1025, 1037; Royster Guano Co. v. Virginia, 253 U. S. 412, 40 S. Ct. 560, 561, 64 L. Ed. 989, 990; Chicago, Milwaukee & St. P. Ry. Co. v. Westby (C. C. A.) 178 F. 619, 47 L. R. A. (N. S.) 97, 102; Gulf, etc., R. Co. v. Ellis, 165 U. S. 150, 165, 17 S. Ct. 255, 41 L. Ed. 666; Gilman v. Sheboygan, 2 Black (67 U. S.) 510, 17 L. Ed. 305, 309; Cotting v. Godard, 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92, 110; Southern Railway Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 542, 17 Ann. Cas. 1247; Southwestern Bell Tel. Co. v. Middlekamp (D. C.) 1 F.(2d) 563, 566. I think these cases, when fairly considered in the light of their respective states of fact, fail to support the contention made. As said in Royster Guano Co. v. Virginia, supra: "It is unnecessary to say that the 'equal protection of the laws' required by the Fourteenth Amendment does not prevent the states from resorting to classification for the purposes of legislation." It is well settled I think on federal authority that state taxing laws do not contravene this constitutional provision merely because they do not require a different method or a different rate of taxation upon banks or like institutions, than upon other classes of property, including moneyed capital not in competition with such banks and competing capital. In discussing the question, counsel for plaintiffs urge the following illustration: "One owning a mortgage for $5,000.00 as 'moneyed capital' is assessed on its actual value, at the same rate as bank stock, that is at from 140 to 150 mills on the dollar, but in practice at 5 mills on the dollar and without deduction for the indebtedness of the owner, but in practice with the deduction by the owner of his individual indebtedness. One owning national or joint stock land bank corporation stock to the amount of $5,000.00 is assessed one-fourth of the assessed value, at a rate of from 140 to 150 mills on the dollar in practice, with no deductions for the indebtedness of the stockholder." I think the fallacy of this illustration lies in confusing the mandate of the statute with the practice under the statute. Considering the several sections of the statute, as I shall later indicate, I think they provide a rational classification for the purposes of

taxation, grouping banks and such corporations as deal in moneyed capital and competing moneyed capital in the hands of individuals, in a single group. The conclusion here reached, of course, involves a construction of several sections of the Iowa statutes, particularly sections 6984, 6985, 6988, 6992, and 7005, at variance with the construction placed thereon by plaintiffs' counsel. Discussion of these respective interpretations I have deferred until consideration of the second question stated.

We come now to consider the second question: Do the statutes in question contravene the prohibition of section 5219 of the Revised Statutes of the United States (12 USCA § 548)? As I interpret plaintiffs' argument, it is contended that section 6984 (Code Iowa 1927), in defining the word "credit," proceeds so broadly as to include all moneyed capital. That the Legislature in framing section 6985, providing for the taxation of "moneys, credits, and corporation shares or stocks, except as otherwise provided, cash, circulating notes of national banking associations, and United States legal tender notes, * * * notes, including those secured by mortgage, accounts, contracts for cash or labor, bills of exchange, judgments, choses in action, liens of any kind, securities, debentures, bonds other than those of the United States, annuities, and corporation shares or stocks not otherwise taxed in kind, shall be assessed *and, excepting shares of stock of national, state, and savings banks, and loan and trust companies, and moneyed capital as hereinafter defined*, shall be taxed upon the uniform basis throughout the state of five mills on the dollar of actual valuation, same to be assessed and collected where the owner resides," failed to define moneyed capital, notwithstanding the words "as hereinafter defined" in that section, and hence that the exception must fall, with the result that all moneyed capital other than the bank shares and loan and trust company shares themselves are required to be taxed at the rate of five mills on the dollar, thereby discriminating against such shares of stock and in favor of moneyed capital, even though in the hands of individual citizens coming in competition with such shares. I think this construction of the sections named unwarranted when taken in the light of other sections of the statutes, and particularly in view of the holding of the Supreme Court of Iowa by repeated decisions. In First National Bank v. Burke, 201 Iowa, 994, 196 N. W. 287, 290, that court says: "This statute expressly

guards against discrimination, and nothing therein contained authorizes a five-mill levy on other moneyed capital which is in competition with the capital of national, state, and savings banks."

Although rather brokenly worded, I think these several sections simply mean that credits, including moneyed capital not coming in competition with national, state, and savings banks and loan and trust companies, shall be taxed at the rate of five mills on the dollar, and that the shares in such institutions and moneyed capital in the hands of individuals in competition therewith shall be taxed as provided in sections 6998 to 7003, inclusive. That is applying the full consolidated levy against one-fourth of the actual value. So construed, I think that these statutes by their terms do not contravene section 5219 of the Revised Statutes of the United States (12 USCA § 548).

Now, while these statutes do not in terms contravene section 5219 of the Revised Statutes, they have by expression and implication imposed upon the assessing and taxing officials of the state a very difficult and arduous duty, namely, that of segregating in the course of assessment and taxation the various species of moneyed capital in the hands of individual citizens of the state coming into competition with the business of national banks from those species of moneyed capital in the hands of individual citizens not coming into competition with the business of national banks. The duty here imposed entails no light task. Its requirements cannot be met by merely inspecting reports of taxpayers, nor by perfunctorily propounding inquiries as to whether the taxpayer has moneyed capital coming in competition with the business of national banks, and accepting without question the yea or nay of the taxpayer. The matter to be determined is often an intricate one—indeed, one upon which even courts of last resort seem hopelessly divided. It would therefore seem that this duty can only be fully performed by reasonable and careful inquiry into the subject by the assessing and taxing officials to the extent of ascertaining the very nature of the moneyed capital and the character of specific securities and investments. If the duty thus imposed upon the assessing and taxing officials of the state is systematically and intentionally slighted and ignored, then the result concerns the third question here to be considered.

There remains the third major question stated. Assuming that the allegations of the

plaintiffs' petition are sufficient as a basis for that question, what is the rule of law that should be applied? The Circuit Court of Appeals of the Eighth Circuit, in Hannan v. First National Bank, 269 F. 527, 534, by way of concession to appellee's claim said: "A systematic and intentional omission to tax a material portion of other moneyed capital of the kind designated in section 5219, Rev. Stats., may be a violation of that section .equally with a similar omission to tax by legislative enactment. Pelton v. National Bank, 101 U. S. 143, 146, 25 L. Ed. 901; Cummings v. National Bank, 101 U. S. 153, 157, 25 L. Ed. 903."

In the Cummings Case, above cited, the court said: "Independently of this statute, however, we are of opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power."

The case of Sioux City Bridge Co. v. Dakota County, Nebraska, 260 U. S. 441, 43 S. Ct. 190, 191, 67 L. Ed. 340, 28 A. L. R. 979, although not a national bank case, is I think applicable in principle. In that case Mr. Chief Justice Taft, speaking for the court, said:

"The charge made by the Bridge Company in this case was that the state, through its duly constituted agents, to wit, the county assessor and the county board of equalization, improperly executed the Constitution and taxing laws of the state and intentionally and arbitrarily assessed the Bridge Company's property at 100 per cent. of its true value and all the other real estate and its improvements in the county at 55 per cent.

"The Supreme Court does not make it clear whether it thinks the discrimination charged was proved or not, but assuming the discrimination, it holds that the Bridge Company has no remedy except 'to have the property assessed below its true value raised rather than to have property assessed at its true value reduced.' The dilemma presented by a case where one or a few of a class of taxpayers are assessed at 100 per cent. of the value of their property in accord with a constitutional or statutory requirement, and the rest of the class are intentionally assessed at a much lower percentage in viola-

tion of the law, has been often dealt with by courts and there has been a conflict of view as to what should be done. There is no doubt, however, of the view taken of such cases by the federal courts in the enforcement of the uniformity clauses of state statutes and constitutions and of the equal protection clause of the Fourteenth Amendment. The exact question was considered at length by the Circuit Court of Appeals of the Sixth Circuit in the case of Taylor v. Louisville & N. R. Co., 88 F. 350, 364, 365, 31 C. C. A. 537, and the language of that court was approved and incorporated in the decision of this court in Greene v. Louisville & Interurban R. Co., 244 U. S. 499, 516, 517, 518, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. · The conclusion in these and other federal authorities is that such a result as that reached by the Supreme Court of Nebraska is to deny the injured taxpayer any remedy at all because it is utterly impossible for him by any judicial proceeding to secure an increase in the assessment of the great mass of under-assessed property in the taxing district. This court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on· the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be. preferred as the just and ultimate purpose of the law. In substance and effect the decision of the Nebraska Supreme Court in this case upholds the violation of the Fourteenth Amendment to the injury of the Bridge Company. We must, therefore, reverse its judgment."

In the light of these authorities and many others which might be cited, I have come to the conclusion that the facts alleged in the plaintiffs' petition are such that, if established by an adequate degree of proof, will show a violation by the state taxing officials and tribunals of section 5219 of the Revised Statutes (12 USCA § 548), and as well a violation of the equal protection of the law clause of the Fourteenth Amendment to the Constitution of the United States. The violation in question arises because of an unlawful discrimination in the administration of the state statutes. This discrimination arises in two forms: First, the taxation of shares in national banks and other institutions dealing in moneyed capital, at a great-

er rate than that imposed on other moneyed capital coming in competition with the national banks; and, second, by reason of a peculiar provision of the state statute which permits those who return moneys and credits for taxation to deduct from the actual value thereof the gross amounts of all debts in good faith owing by them, whereas in the case of shares of stock in state, savings, or national bank or loan and trust company, no such deduction is permitted. This latter provision becomes offensive to the federal statute and Constitution whenever moneyed capital competing with national banks is assessed under the five-mill levy section of the statute in connection with which the deduction named is allowed.

In considering the third remedial question heretofore stated, it is necessary to first determine the status of the tax that was in fact assessed and levied. Examination of the authorities submitted lead to the conclusion that a tax assessed and levied in the circumstances alleged in the plaintiffs' petition is not merely invalid because of irregularity, but invalid because of a direct violation of the act of Congress permitting and limiting the right to tax national banks, and is therefore void. It is settled by a great weight of authority that an invalid tax is a void tax. That seems to be the rule in Iowa. In McDonald v. Clarke County, 196 Iowa, 646, 649, 195 N. W. 189, 190, it is said: "We think that the effect of our previous cases is to say that an illegal assessment is a void one, and that equity will therefore extend relief; that an irregular assessment is not void, and must be corrected in the method pointed out by the statute." In Merchants' National Bank v. Richmond, 256 U. S. 635, 41 S. Ct. 619, 621, 65 L. Ed. 1135, an action attacking the validity of an assessment of 175 mills on shares of national bank stock, while moneys and credits were assessed at only 95 mills on the dollar, the court said: "In the present case, there is a clear showing of such competition, relatively material in amount, and it follows that, upon the undisputed facts, the ordinance and statute under which the stock of plaintiff in error was assessed, as construed and applied, exceeded the limitation prescribed by section 5219, Rev. Stat., and hence that the tax is invalid."

The first inquiry, therefore, is whether plaintiffs waived their remedy by failing to exhaust some administrative remedy provided by the statutes of Iowa. I think that question must be answered in the negative.

The rule seems to be quite well crystalized that the requirement that administrative remedies be first exhausted applies to those cases in which the tax is merely irregular, and where in the exercise of some discretion by an administrative officer or board the irregularity can be corrected. The rule, however, does not extend to those cases where the tax is void, and where no exercise of discretion by an administrative reviewing tribunal could correct it. The situation in the present case is that as compared with the taxes imposed on national bank shares, a great volume of moneyed capital possessed by numerous individuals of the taxing district, not to say throughout the state, has been taxed by an entirely different method, thereby discriminating severely against national bank shares. The situation is similar to that of Munn v. Des Moines National Bank (C. C. A.) 18 F.(2d) 269, 272. In that case the late Senior Circuit Judge Sanborn said:

"They rely on the proposition that a taxpayer must exhaust his remedies under the administrative boards before he may have relief by a judicial tribunal and cite many authorities, including First National Bank v. Weld County, 264 U. S. 450, 44 S. Ct. 385, 69 L. Ed. 784, and Griswold Land & Credit Co. v. County of Calhoun, 198 Iowa, 1240, 201 N. W. 11, two opinions perhaps as favorable to their view as any to which they call attention. In these two cases the facts were that the taxing officers had assessed and taxed the property of the complainants too high, higher relatively than the property of other taxpayers of like value was assessed and taxed and these facts appeared on the face of the public records so that when these records were made the complainants were charged with legal notice thereof.

"In the former case the assessor fixed the taxable value of the complainant's shares and of the shares of other banks at the market value thereof and the taxable value of other property at 61 per cent. for 1913 and 80 per cent. for 1914 of its market value, and the state tax commission subsequently by order increased the taxable value of the property in the county 63 per cent. in 1913 and 25 per cent. in 1914, without so increasing the taxable value of the property in other counties. In the latter case the property of the complainant had been assessed and taxed higher than property of like character and value of other taxpayers. In each of these cases the property of the complainants had been illegally assessed and taxed too high,

and that fact was shown by the public records of which the complainants had legal notice at such times that they could have availed themselves of the remedy offered by the statutes of the state through the administrative boards. It was not so with the shareholders of these banks and the banks themselves. Their grievances were that the property of other taxpayers, taxpayers in whose hands was property that they had used and were using during the years in question in competition with the normal business of these banks, was by the taxing officers illegally taxed too low. That fact, however, did not appear upon the face of any of the public records, because those records did not separate the taxpayers who had used and were using their moneyed capital in competition with the normal business of these banks from those who had not done and were not doing so, and time, search, and extended investigation after the amounts of the taxes in each year were fixed and disclosed by the public records were indispensable to the discovery and statement of their names and their competing property.

"Section 1373 of the Code Supplement of Iowa of 1913 required any person aggrieved by the taxation of his or its property to make an oral or written complaint, which should consist 'of a statement of the errors complained of, with such facts as may lead to their correction, * * * before the meeting of the board for final action with reference thereto.' The assessment books in each of these years were not completed so that a taxpayer could know what the amounts of his assessments and taxes were until within a few days before the final action of the board of review with reference thereto. The time fixed by the statute for a taxpayer to make his statement to the board of review of the errors he complained of with such facts as might lead to their correction was only a few days. It was a very short time. The Supreme Court of that state had held that the taxpayer coming before the board of review for relief must state his grievance 'with sufficient particularity and must specify his complaint with sufficient certainty to enable the tribunal, supposing it to possess ordinary intelligence, to comprehend and understand the matters of which complaint is made, and to grant the particular relief sought for in the complaint. He is not entitled to have any question determined on appeal, except such as he called upon the tribunal to determine in the first place.' First National Bank v. City of Council Bluffs, 182 Iowa, 107, 112, 113, 161 N. W. 706, 708.

"The record in these cases before us shows that the number of instances in which the complainants in this court claim that moneyed capital in the hands of individuals taxable in the county was used in competition with the normal business of these banks and had been illegally taxed at the five mills' rate in the years under consideration was in the hundreds; that the value of property that they claimed had been thus illegally taxed was more than $6,000,000; that the number of items of such moneyed capital so taxed was many hundreds. The number of witnesses presented to the court below in the hearing of these cases was more than 150. The testimony was condensed and appears in narrative form, and the printed pages of the record are 599. The tribunal to which these banks must present all their alleged errors and complaints, 'with such facts as may lead to their correction' (section 1373), was the city council of the city of Des Moines. The Supreme Court of Iowa had declared that, on an appeal from the board of review to the court from the action of this city council, the complainants would not be 'entitled to have any question determined on appeal, except such as he called upon the tribunal (board of review) to determine in the first place.' [First Nat. Bank of Council Bluffs v. City of Council Bluffs] 182 Iowa, 112, 113, 161 N. W. 708.

"The city council of Des Moines was not a judicial body. The competitors of these banks and their shareholders that had escaped four-fifths to five-sixths of the taxes they should have paid and their employees were not very likely to volunteer testimony or evidence to sustain the claims of these banks, and the city council had no power to issue subpœnas to compel them to testify. It does not seem to us to have been either practical or possible for the shareholders of these banks, or the banks themselves, to have searched out, learned, and stated to this city council within the times required by section 1373 the errors of which they complained 'with such facts as may lead to their correction' (section 1373), much less to have had the city council so determine the questions they present that the complainants could have obtained through the proceeding authorized by section 1373 any just or adequate remedy for the grievances they had presented. In our opinion the facts of these cases, some of which have now been recited, clearly except them from the operation of the proposition that they must exhaust their remedy before the administrative board, because that remedy was not only inadequate

but necessarily impractical and futile and the court below had plenary jurisdiction in equity to hear and decide the questions in these cases and to grant adequate relief to the complainants."

The foregoing language was, of course, used in an equity suit to enjoin the collection of the tax, but I think the rule must of necessity be the same when the question is raised in an action at law to recover taxes paid under a void assessment.

■ Have plaintiffs waived their remedy by not making a formal protest?

Section 7235 of the Code of Iowa, in force during all of the period in question, provides: "The board of supervisors shall direct the treasurer to refund to the taxpayer any tax or portion thereof found to have been erroneously or illegally exacted or paid, with all interest and costs actually paid thereon."

In Slimmer v. Chickasaw County, 140 Iowa, 448, 118 N. W. 779, 780, 17 Ann. Cas. 1028, it is said: "Under this section it has been held in many cases that a taxpayer may by action recover back taxes erroneously or illegally exacted or paid, even though paid voluntarily and without protest"—citing Richards v. Wapello County, 48 Iowa, 507; Dickey v. Polk County, 58 Iowa, 287, 12 N. W. 290; Lauman v. Des Moines County, 29 Iowa, 310.

I think it quite clear that the mere matter of simultaneous formal protest on payment of a void tax is not controlling.

Is an action at law the proper remedy in these cases?

■ Counsel for plaintiffs cite a very great number of cases in support of the proposition that an action at law is the proper remedy. Among them are the following cases: National Rockland Bank v. City of Boston (D. C.) 296 F. 743; Erskine v. Van Arsdale, 15 Wall. 75, 21 L. Ed. 63; Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 S. Ct. 942, 57 L. Ed. 1288, 1291; Central National Bank v. McFarland (D. C.) 20 F.(2d) 416, 417; McFarland v. Central Nat'l Bank (C. C. A.) 26 F.(2d) 890, 891; Ogden City v. Armstrong, 168 U. S. 224, 18 S. Ct. 98, 42 L. Ed. 444, 453; Tyler v. Dane County (D. C.) 289 F. 843, 847; Schell v. Cochran, 107 U. S. 626, 2 S. Ct. 827, 27 L. Ed. 544, 545; Stanley v. Board, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000; Hughes v. Northern Pacific Ry. Co. (C. C.) 18 F. 106, 111; Shelton v. Platt, 139 U. S. 591, 11 S. Ct. 646, 648, 35 L. Ed. 273; Bur-

rill v. Locomobile Co., 258 U. S. 34, 42 S. Ct. 256, 66 L. Ed. 450, 453; Ward v. Board of County Com'rs of Love County, Okl., 253 U. S. 17, 40 S. Ct. 419, 64 L. Ed. 751; First Nat'l Bank of Greeley v. Board of Com'rs of Weld County, 264 U. S. 450, 44 S. Ct. 385, 68 L. Ed. 784; Minnesota v. First Nat'l Bank, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774; Bonaparte v. American-First Nat'l Bank (Okl. Sup.) 281 P. 958; Sioux Falls Savings Bank v. Minnehaha County, 29 S. D. 146, 135 N. W. 689, Ann. Cas. 1914D, 910.

Some of these cases are not particularly helpful. Others seem to settle the question in favor of jurisdiction at law, rather than at equity, where there are not some peculiar circumstances which invoke the concurrent equitable jurisdiction, such as the tax becoming a lien upon property and clouding titles, or necessitating a multiplicity of suits, and other circumstances peculiar to the invocation of the concurrent equitable jurisdiction. It is said in Shelton v. Platt, supra: "When a tax is assessed as a personal charge against the party taxed, or against his personal property, it is difficult to suggest any ground of equitable jurisdiction. Presumptively the remedy at law is adequate. If the tax is illegal, and the party makes payment, he is entitled to recover back the amount. The case does not differ in this regard from any other case in which a party is compelled to pay an illegal demand; the illegality alone affords no ground for equitable interference, and the proceedings to enforce the tax by distress and sale can give none, as these only constitute an ordinary trespass."

What has been said in this discussion has related to national banks. One of the cases in which one of these demurrers has been filed involves the taxation of a federal joint-stock land bank. Section 932, Title 12, U. S. Code (12 USCA § 932), being one of the sections of the Act of July 17, 1916, provides: "Nothing herein shall prevent the shares in any joint-stock land bank from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the bank is located; but such assessment and taxation shall be in manner and subject to the conditions and limitations contained in section 548 with reference to the shares of national banking associations."

From this it would seem that all that has been said as to the assessment and taxation

of shares of national banks applies equal-. ly to the assessment and taxation of joint-stock land banks. I say this, assuming that such shares are taxable under the laws of Iowa, although no specific act for their taxation has been called to my attention.

In the light of these conclusions, it follows that the demurrers in each of the foregoing entitled cases should be overruled.