## MILWAUKEE & ST. PAUL R. CO. v. THE COUNTY OF KOSSUTH.

1. **Taxation:** ASSESSMENT: RAILROAD. Chapter Twenty-Six, Laws of Fourteenth General Assembly, providing for the taxation of railway property, directed that the assessment for the year 1872, should be made in the month of July. It was *held* that the road tax upon such property for that year was collectible, notwithstanding the date of the assessment rendered impossible a compliance with the formal requirements of the statutes, respecting the manner in which the tax should be extended upon the tax list.

2. ——: ——: CLERK OF BOARD OF SUPERVISORS. That the legislature authorized the collection of a tax, and imposed upon no one the duty of extending the tax upon the tax list, would imply the intention that such duty should be performed by the clerk of the Board of Supervisors.

3. ——: SCHOOL TAX: DIVISION OF TOWNSHIP. By a division of the township of A. the township of W. was created. the division to take effect for school purposes at the March election, 1872. The county superintendent made his return of the number of scholars of the old township in October, 1871, but made no return respecting the new township. The taxes for teachers' and contingent funds for the year 1872, in both townships, were not in excess of the statutory limitation: *Held*, that such taxes in the township of W. were collectible.

4. ——: LEVY OF TAX: MANNER OF SUBMISSION. When the Board of Supervisors resolved to submit the question of issuing bonds for the construction of a court house, and of levying a tax to pay for the same, and prescribed that the form of the ballot should be " For Court House Bonds " and " Against Court House Bonds," it was *held* that a majority of votes in favor of the proposition included the adoption of the proposition to levy the tax.

### *Appeal from Kossuth Circuit Court.*

### FRIDAY, JUNE 18.

THE petition alleges:

1. That on or about the 31st of July, 1872, the Census Board of the State of Iowa assessed petitioner for the purposes of taxation for the year 1872 on all its property, both real and personal, exclusively used in the operation of its road, in the aggregate value of $57,600, in Kossuth county. That

the plaintiff's railroad on which the assessment was made runs through Wesley and Algona townships, in said county.

That this valuation or assessment was not entered upon any of the original assessment books of either of said townships, and did not appear upon any of the respective copies thereof, furnished by the respective assessors to the township clerks, on the 1st day of April, 1872, or at any other time.

Nor did said valuation or assessment appear upon any assessment book at the time of the levy of road taxes for the year 1872, by the trustees of either of the townships aforesaid, neither did it form any part of the basis of said levy. Nor did the valuation or assessment, or any tax thereon, appear upon any of the tax lists made out by the respective clerks of said townships, and delivered to the several road supervisors of said townships, as required by sections 892 and 893 of the Revision.

Neither did any road supervisor, in either of said townships, at any time post up in any place any notice of any road tax, or report any road tax to any township trustees of the said townships as unpaid, or assessed to your petitioner, or on the valuation or assessment aforesaid for the year 1872. Nor did the clerks of either of the aforesaid townships, at any time make out a correct list or certified copy thereof, or transmit either of the same to the clerk of the Board of Supervisors of Kossuth county, containing any tax on the aforesaid assessment or valuation, or against your petitioner.

That the county auditor and clerk of the Board of Supervisors of said county of Kossuth, on his own motion and without authority of law, extended upon the tax rolls of said county for the year 1872 a tax against your petitioner, on the valuation aforesaid, of the sum of $201.60 for road tax, and said county auditor and clerk directed the treasurer of said county to collect said road tax in the same manner as other taxes. That on the 28th day of February, 1873, plaintiff paid said tax, protesting that it was illegal, and on the 2d of September, 1873, plaintiff presented to the Board of Supervisors of Kossuth county, a claim for the refunding of said tax, and demanded payment of the same, which was refused.

2. That at their September Session, 1872, the Board of Supervisors of said county made an order declaring the length of the main track in the township of Wesley, in said county, and a valuation was placed on that part of the line in said township of $28,800, for taxation purposes for 1872. That at said september session the Board of Supervisors levied a per centum of ten mills on the dollar on the assessed value of the property in the district township of Wesley, for teacher's fund for the year 1872, for said district township.

That the per centum so levied, in said district township, amounts to $1,516.68, for 1872. That previous to said levy of ten mills, no report had been filed by the county superin- tendent of said county of Kossuth with the auditor, showing the number of scholars in the district township of Wesley, between the ages of five and twenty-one years; for the year 1871, such a report had been filed stating the number of such scholars in the townships of Wesley and Algona in the aggre- gate, but in no way designating the number of scholars in each.

That in 1872, the county superintendent of said county reported to the auditor 95 scholars, residing in the district township of Wesley, between the ages of five and twenty-one years, and the number of scholars in said district township for the year 1871 was less than for the year 1872.

That the semi-annual apportionment, for the year previous to said levy, amounted to one dollar and twenty-three and one- half cents for each scholar in said township. That in pursu- ance of said levy, the county auditor extended on the tax books of said county, for the year 1872, the said levy of ten mills on the dollar, for said teacher's fund on said valuation and assessment of $28,800, in Wesley township, making a tax on plaintiff's property of $288.00, and directed the treasurer to collect the same.

3. The third count contains similar allegations respecting the levy of a tax of four mills for contingent fund, amount- ing to $115.20, on plaintiff's property.

4. That at the June Session, 1871, of the Board of Super-

visors of Kossuth county, the following was adopted by said Board:

"*Resolved; by the Board of Supervisors of Kossuth county, Iowa,* At the June, A. D. 1871, regular session, that the following question be and is submitted to the people of said county, at the next regular election, to-wit: That the bonds of the county be issued in the sum of $25,000, upon which to borrow money to erect a court house in and for said county; said bonds to be issued in denominations of not less than $100, and to bear interest at the rate of ten per cent. per annum, with interest payable annually, on the 1st day of December of each year, at the office of the county treasurer of said county, provided, "that said bonds shall not be sold for less than ninety cents on the dollar. Three thousand dollars of said bonds shall be made due and payable on the 31st day of December, A. D. 1874, and three thousand dollars on the 31st day of December of each of the years 1875, 1876, 1877, 1878, 1879 and 1880 respectively, and four thousand dollars shall be due and payable on the 31st of December, A. D. 1881. All of said bonds shall be payable at the office of the county treasurer of said county.

That a tax of five mills on the dollar shall be levied upon the taxable property of said county, for the year 1872, for the payment of said bonds and interest, and in case said levy shall not pay said bonds and interest, then said rate shall be continued from year to year until the amount is paid. This resolution shall take effect and be in force on the 1st day of January, 1872. All the legal voters of said county who shall be in favor of the foregoing proposition and resolution shall deposit ballots having written or printed thereon the following words, to-wit: 'For court house bonds.'

And all of said legal voters who shall be opposed to said proposition and resolution shall deposit ballots having written or printed thereon the following words, to-wit: 'Against court house bonds.'

*Resolved, by the Board of Supervisors of Kossuth county, Iowa,* That the clerk of the Board of Supervisors of said

county is hereby ordered 'to cause due and legal publication and posting of the foregoing resolution.' "

That at the next general election following, in the year 1871, a majority of the ballots or votes, cast in said county, were "For court house bonds," and none of the votes so cast contained any reference to, or indicated any adoption or rejection of any tax whatever wherewith to pay said bonds. That the question of raising or levying any tax in addition to the usual taxes, for the payment of said bonds, was not voted on or adopted by the voters of said county.

That in pursuance of said vote, and without any other authority, the Board of Supervisors levied a tax on the valuation of $57,600, for the year 1872, of five mills on the dollar, for court house bond tax, amounting to $288.00.

The petition alleges that, on the 28th of February, 1873, plaintiff paid all of said taxes, protesting that they were illegal; and that, afterward, plaintiff presented to the Board of Supervisors a claim for the refunding of said taxes, and demanded payment of the same, which was refused. Plaintiff demands judgment for the amount of said taxes and interest.

The defendant demurred to the petition upon the following grounds: That the facts stated in the first count do not entitle the plaintiff to the relief demanded, in that:

1. It does not show that the road tax sought to be recovered was not regular and legally assessed.

2. It does not show that the plaintiff's property, upon which the tax was levied, was assessed prior to July 31, 1873.

3. It does not show but that the Census Board of the State of Iowa, and the Board of Supervisors of said Kossuth county, performed their whole duty in assessing the property for the year 1872, and levying the tax thereon.

4. It does not show but that the clerk of the Board of Supervisors performed his whole duty in correcting the said road tax for the year 1872, by extending the omitted tax.

5. It does not show that the provisions of Chapter 26 of the Fourteenth General Assembly of the State of Iowa have not been fulfilled.

That the facts stated in the second count of plaintiff's peti-

tion do not show that the levy of the tax of ten mills on the
dollar on the assessed value of the property in the district
townships of Wesley and Algona in the aggregate for
teachers' fund, for the year 1872, was in excess of fifteen dol-
lars per pupil, including the amount received from the semi-
annual apportionment, as shown by the last report of the
county superintendent, to-wit: the year 1871.

That the facts stated in the third count of plaintiff's peti-
tion do not entitle plaintiff to the relief demanded, in that
they do not show that the levy of the tax of four mills on the
dollar in the district townships of Wesley and Algona, in the
aggregate, for contingent fund, was in excess of the sum of
five dollars per pupil in said townships, as shown by the last
report of the county superintendent.

That the facts stated in the fourth count of plaintiff's peti-
tion do not entitle the plaintiff to the relief demanded, in that
it does not show that the question of levying a tax to pay the
bonds to be issued was not submitted to the legal voters of
said Kossuth county, and adopted by them at the general
election at which the question of issuing bonds was submitted
and voted for.

The cause coming on for hearing on the demurrer to the
petition, the respective parties agreed that the petition might
be considered as though it alleged the facts contained in the
following stipulation, to-wit: " That in the year 1871, the
Board of Supervisors of Kossuth county, Iowa, divided the
then township of Alonga, by creating and setting off the new
township of Wesley. That this division took effect for ordi-
nary civil purposes at the October election, A. D. 1871, and
for school purposes at the March election, A. D. 1872. Mean-
time the county superintendent had made his return to the
county auditor of the number of scholars in the then district
township of Algona, embracing both townships as they existed
when the tax of 1872 was levied, but no separate return for
the portion now constituting the district of Wesley."

The demurrer was sustained to each of the counts, and, the
plaintiff failing to plead over, the court rendered judgment
in favor of defendant for costs. Plaintiff appeals.

*Thos. Updegraff*, for appellant.

*Cravath & Birge*, for appellee.

DAY, J.—I.   Chapter 26, Laws Fourteenth General Assembly, approved April 6, 1872, provides a mode for the assessment **1. TAXATION: assessment of railroads.** of railroad property used in the operation of the road, and repeals all statutes inconsistent therewith. Section one of this chapter makes it the duty of the Census Board to assess such railroad property on the first Monday of March in each year. Section twelve provides that for the year 1872 the assessment shall be made in July.

Section 2, chapter 100, Laws of Twelfth General Assembly, provides that the township trustees, at their annual meeting, to be held on the second Monday in April, shall determine upon the amount of property tax to be levied for roads, bridges, plows, scrapers, tools and machinery adapted to the construction and repair of roads, and for the payment of indebtedness, and shall levy the same, which shall not be more than three mills, nor less than one mill, on the amount of the township assessment for that year.   Sec. 892 of the Revision provides that the township clerk shall, within four weeks after the levy, make out a tax-list in tabular form and alphabetical order, for each road district in his township, and that, to enable him to make out such list, the assessor shall furnish the township clerk of each township with a correct copy of the assessment lists of the township for that year, which list shall be the basis of the tax list. Sec. 893 provides that the township clerk shall attach to the list his warrant, in general terms, requiring the supervisors of the district to collect the taxes, and that he shall cause such list to be delivered to the proper supervisors by the first day of May after the levy, which list shall be sufficient authority for the supervisor to collect all taxes charged therein against any resident property holder in his district.

Section 895, Revision, makes it the duty of the township trustees, on the second Monday in April, to determine the price of labor for men and teams.   Section 896, Revision, prescribes

the notice which the road supervisor shall give to all persons in his district charged with a road tax, of the days he will superintend the work on the roads in his district, and makes it the duty of the person so notified to meet the supervisor at the time and place designated, and provides that, in case of failure to attend, the supervisor shall commence suit for the collection of the tax which such person is liable to pay.

Section 3, chapter 100, Laws Twelfth General Assembly, is as follows: " The supervisor shall, within ten days after receiving the tax-list specified in sections 892 and 893 of the Revision of 1860, post up, in three conspicuous places within his district, written notices of the amount of road tax assessed to each tax payer in said district, and in case of a failure to pay said tax by the first Monday in October, in each year, the supervisor shall report the same to the township trustees, the same as tax on non-resident lands, and the tax thereon shall be collected in the same manner, and the same penalties, as in the case of non-resident lands."

Section 1, chapter 76 of the Laws of the Twelfth General Assembly provides: " That the township clerks shall, on or before the second Monday of October, in each year, make out a correct list of all non-resident land and town lots, on which the road tax has not been paid, and the amount of tax charged on each piece of land and town lot, designating the district in which said land or town lot is situated, and transmit a certified copy of the same to the clerk of the Board of Supervisors of the proper county, who shall enter the amount of tax on each piece of land and town lot on the tax list, opposite such piece of land and town lot respectively, in the column ruled for that purpose, the same as other taxes, and deliver the same to the county treasurer, charging him with the same, which shall be collected by such treasurer in the same manner that county taxes are collected."

The petition alleges that the Census Board of the State assessed the property of plaintiff on or about the 31st day of July, 1872, and it tacitly admits that the township trustees, at the proper time, levied the proper rate of tax for road purposes.

The objections urged against the tax are that the assessment was not entered upon the original assessment books of the townships named; that it did not appear upon any of the copies thereof furnished to the township clerks; that it did not appear upon any assessment book at the time of the levy of road taxes for the year 1872, by the township trustees; that the assessment or any tax thereon did not appear upon the tax lists made out by the clerks of the townships in question, and delivered to the road supervisors; that no road supervisor in either of said townships posted a notice of any road tax, or reported to any township trustee of their township any road tax unpaid or assessed to plaintiff; that the clerks of the townships named did not transmit to the clerk of the Board of Supervisors a list containing any tax on the assessment against plaintiff, and that the clerk of the Board of Supervisors of Kossuth county on his own motion, and without authority of law extended upon the tax rolls of the county, the tax in question.

It is conceded that the provisions of the statutes which we have enumerated, and on account of a disregard of which it is claimed the tax in question is void, could not in the nature of things have been complied with for the year 1872, for they are all based upon an assessment previously made, and most of them are directed to be done before any assessment of railroad property could occur under section 12, chapter 26, Laws Fourteenth General Assembly.

One of two conclusions must be true. The legislature intended that, for the year 1872, a road tax against railroads should be valid without complying with these conditions, or it intended that for the year 1872 railroads should escape taxation for road purposes.

Section 6, chapter 26, Laws Fourteenth General Assembly, is as follows: "All such railroad property shall be taxable upon said assessment at the same rates, by the same officers, and for the same purposes as the property of individuals within such counties, cities, towns, townships and lesser taxing districts." This clearly indicates an intention that the property in question should be taxed at the same rate, and for

the same purposes for the year 1872, as the property of indi-
viduals. We conclude, therefore, that the legislature did not
intend that the property in question should escape road taxes
for the year named.

How then is this intention to be effectuated and enforced?
The tax cannot be extended upon any list made out by the

2. ———: ——: township clerk, for he was required to make out
clerk of Board his list, and deliver it to the road supervisor,
of Supervi-
sors.           before the property in question was assessed.
Some one must perform this merely clerical duty, or the tax
must fail, and the legislative will must be defeated. It is the
duty of the clerk of the Board of Supervisors to enter in a
suitable book, provided him for that purpose, the names of
tax payers, descriptions of lands, number of acres and value,
number of town lots and value, and value of personal prop-
erty, and each description of tax. Revision of 1860, section
745. The provisions of this section we concede apply pri-
marily to State, county and school taxes, and those for repair-
ing bridges, and such road taxes as are properly certified by
the township trustees. But the language is broad enough to
include all taxes. And, when the legislature authorized the
collection of a road tax, and authorized no one to extend the
tax upon the tax list, the effect of such legislation was to
enlarge the primary signification of section 745, and to impose
that duty upon the clerk of the Board of Supervisors.

We conclude that the road tax in question is legal, and that
the demurrer to the first count in the petition was properly
sustained.

II. The objections to the taxes for teacher's and contingent
fund involve the same questions, and may be considered

3. ———: together. Section 31, chapter 172, Laws of the
school tax: Ninth General Assembly, provides that the Board
division of
township.     of Supervisors shall, at their regular meeting in
April in each year, determine the amount necessary to be
levied on the property in the district for the teacher's and
contingent fund, and cause the same to be certified to the
county Board of Supervisors, who shall cause the same to be

levied and collected as other district taxes. This section fixes. no limit upon the amount of levy.

Section 1, chapter 31, Laws Fourteenth General Assembly, provides: "That the amount of tax levied under section 31, chapter 172, Acts of the Ninth General Assembly shall hereafter be limited as follows: The amount to be raised for contingent fund shall not exceed five dollars per scholar, and the amount raised for teachers' fund, including the amount received from the semi-annual apportionment, shall not exceed fifteen dollars per scholar, for each scholar residing in the district township or independent district for which the tax is levied. The number of persons between the ages of five and twenty-one years, as shown by the last report of the county superintendent, shall, for the purposes of this act, be deemed the number of scholars in each school district."

Section 70, chapter 172, Laws of the Ninth General Assembly, requires that the county superintendent shall, on the 5th day of October of each year report to the clerk of the Board of Supervisors the number of persons between the ages of five and twenty-one years, in each school district in the county. From the stipulation of the parties, which is to be regarded as a part of the petition, it appears that in the year 1871 the Board of Supervisors divided the township of Algona, creating the new township of Wesley, that this division for school purposes took effect at the March election, 1872, and that in the meantime the county superintendent made his return of the scholars in the then district of Algona, but made no separate return for the portion now constituting the township of Wesley.

As the county superintendent was required to make his report for 1871 on the 5th day of October, which was before the division of the township took effect, he could do no other than report all of the scholars in the district as it existed at the time. When the tax for 1872 was levied, there was, and in the nature of things could be, no report of the number of scholars in the new district of Wesley.

If a literal and strict construction must be placed upon the statutes which have been considered, it follows that no legal

school tax could be raised in the district township of Wesley, for the year 1872, notwithstanding the fact that the division was complete in March of that year. But certainly the legislature did not intend that a new district township should be deprived of the right of levying taxes for the year in which it was created. We must look then to the spirit, and not to the mere letter, of these statutes. *Qui haeret in litera, haeret in cortice.*

We are of opinion that, if the taxes levied in the new district townships of Wesley and Algona, for the year 1872, are not in excess of $15 per scholar for the teachers fund, and $5 per scholar for the contingent fund, as shown by the report of the county superintendent in October 1871, for the old district township of Algona, there has been no violation of the spirit of these provisions.

The petition does not allege, in the second and third counts, that the tax levied is in excess of the limit above named, and the demurrer thereto was properly sustained.

III. The Board of Supervisors of Kossuth county at their regular session in June, A. D. 1871, adopted a resolution that the question of issuing the bonds of the county for $25,000.00, for the purpose of erecting a court house, and of levying a tax of five mills on the dollar for the year 1872, to be continued from year to year until the amount of said bonds is paid, be submitted to the people of the county at the next regular election. The resolution prescribed that the form of ballot should be, for those voting for the proposition, "For court house bonds," and for those voting against the proposition, "Against court house bonds."

4. ———: levy of tax: manner of submission.

The petition alleges that a majority of the ballots cast at the election were "for court house bonds," but that none of them adopted any tax wherewith to pay them. The position is not sound. The proposition submitted was to issue bonds and provide a tax for their payment.

The Board of Supervisors prescribed a form of ballot, a form not intelligible to one having no knowledge of the resolution, but perfectly clear to one possessed of such knowledge.

They also required their clerk to cause due and legal publica-
tion and posting of the resolution. This required that not
only the question submitted, but the form in which the vote
would be taken, should be published. Revision, section 251.
It is presumed in the absence of any averment to the contrary
that proper publication of the question was made. When,
therefore, any one voted "for court house bonds," he voted
that a tax of five mills on the dollar should be levied for pay-
ing them, just as much as he voted that the county should
issue bonds to the extent of $25,000, for the erection of a
court house. And the aggregate vote of the county "for
court house bonds," was also a vote that a tax of five mills on
the dollar be levied for the purpose of discharging them. *State
v. Bissell*, 4 G. Greene, 328; *McMillan v. Lee County*, 3
Iowa, 311.

The demurrer to the fourth count was properly sustained.

AFFIRMED.