114 502
6123 543

114 502
6125 715

114 502
0134 140

114 502
138 735

THE MINNEAPOLIS AND ST. LOUIS RAILROAD COMPANY, Appellee, v. THE CEDAR RAPIDS, GARNER AND NORTHWESTERN RAILWAY Co., Appellant.

**Interlocking Switch:** EXPENSE OF FURNISHING. Under Code, section 2063, providing that, in case one railway desires to cross another at grade, the company so desiring to cross may be 1 compelled to interlock such crossing, where such interlock is so compelled such company must be at the expense of providing the interlocking mechanism.

SAME: *Statutes.* Acts Twenty-fifth General Assembly, chapter 25, section 3, provided that where one railway company desired to cross another at grade it might be compelled to interlock 2 such crossing "and pay the cost of such appliance." In the revision of the Code the words "and pay the cost of such appliance," were omitted, the rest of the section being inserted as section 2063. *Held*, that the words omitted were mere surplusage, and dropping them did not change the meaning of the section.

SAME: *Apportionment of costs construed.* Code, section 2064, providing that in the cases contemplated in the three preceding sections the costs shall be apportioned, relates only to the costs of the 3 proceedings, and not to the expense of the interlocking device at railroad crossings, to provide for which such proceedings are instituted.

*Appeal from Hancock District Court.*—Hon. John C. Sher-
win, Judge.

Monday, October 7, 1901.

Suit in equity to enjoin defendant from crossing plain-
tiff's right of way without providing an interlocking crossing
at its own expense. From an interlocutory decree in favor
of plaintiff, defendant appeals.—*Affirmed.*

*Robert Mather, E. C. Ripley,* and *S. K. Tracy* for ap-
pellant.

*Albert E. Clarke* and *R. M. Wright* for appellee.

Deemer, J.—Plaintiff has owned and operated a line
of railway through Hancock county for more than 15 years.
Defendant, a recently organized corporation for running a
railway, was at the time this action was commenced engaged
in the construction of its roadbed, the projected line of which
intersected and crossed the right of way and main track of
plaintiff's railroad. After the issues were fully made up, the
plaintiff moved for judgment on the pleadings, which motion
was sustained, and the appeal is from that ruling.

Primarily the case involves a construction of section
2063 of the Code, which reads as follows: "Proposed Cross-
ing. In case one railway company desires to cross, with its
tracks, those of another, at grade, and such companies
cannot agree to the terms thereof, the company desir-
ing to cross shall, upon the application of the company
whose track it is desired to cross, in a proceeding instituted
as provided in the two preceding sections, be compelled to
interlock such crossing; and the court therein shall make
such orders and decree as may be required to secure public
safety and the preservation of the properties of the road, and
prescribe the terms upon which such crossing shall be main-

tained after being made. The provisions of this and the two preceding sections shall not apply to side tracks." Plaintiff contends that the company desiring to cross a line already established must be at the expense of providing the interlocking mechanism; that, if this be not true, the statute, in so far as it imposes any part of the expense on the established road is unconstitutional, and that apportionment of the cost of interlocking apparatus or of maintaining the same is not authorized by law; while defendant argues that the cost must be apportioned, that the statute in constitutional, and that in virtue of its reserved and police powers the legislature has authorized and directed an apportionment of the cost for interlocking crossings. To arrive at a proper construction of section 2063, it is necessary to consider sections 2060, 2061, and 2062 of the Code. These are as follows:

"Sec. 2060. Interlocking Switches. When in any case two or more railroads cross each other at a common grade, or a railroad crosses a stream by swing or draw bridge, they may be equipped thereat with an interlocking switch system, or other suitable safety device rendering it safe for engines or trains to pass thereover without stopping; and if such interlocking switch system, or other safety device, shall have been approved by the railroad commissioners, then the engines and trains of such railroad or railroads may pass over such crossings or bridge without stopping, the provisions of any other law to the contrary notwithstanding; and the provisions of the three following sections are not applicable in such a case.

"Sec. 2061. Proceedings to Establish. In any case where the tracks of two or more railroads cross each other at a common grade, any company owning one of such tracks and desiring to unite with others in protecting the crossing with interlocking or other safety device, and being unable to agree with such others thereon, may file in the district court of the county in which the crossing is located a peti-

tion, stating the facts and asking the court to order such crossing to be protected by interlocking or other safety device. Said petition shall be accompanied by a plat showing the location of all tracks and switches, and upon the filing thereof notice shall be given by the petitioner to every other company or person owning or operating any track involved in such crossing. The court, or a judge thereof if the petition is filed in vacation, shall thereupon appoint a commissioner to examine into the necessity for such system, and report the facts and his recommendation in such a time as the court or judge may direct, and, as soon as practicable thereafter, the court or judge shall appoint a time and place for the hearing of such petition. The proceedings shall be in equity, and subject to all the rules of equity practice, except that the court shall require the issues to be made at the first term after the petition is filed, and give the proceeding precedence over other civil business and try the action thereat, if possible.

"Sec. 2062. Decree. After allowing all parties full opportunity to show cause why such system should or should not be ordered thereat, the court shall, if it is found the plaintiff should prevail, enter its decree ordering the establishment of such system as it may prescribe, the time within which it shall be begun and finished, and the proportion of the expense thereof to be paid by each company or person interested in the crossing, and make such division of the costs as may be equitable."

It will be observed that these three sections relate to crossings already established; the first to where interlocking systems are established by agreement between the parties, and the second to cases where the crossing has already been made, and one of the companies desires to unite with others in protecting it. Section 2063 is the only one which applies where one company desires to construct a new track across an existing one. That section plainly provides that, when the companies cannot agree on the terms of a grade crossing,

the company desiring to cross shall, upon application of the other company, be compelled to interlock such crossing, and the court shall make such orders as may be required to protect the public safety and the preservation of the properties of the road, and prescribe the terms upon which such crossing shall be maintained after being made. The original of this section (section 3, chapter 25, Acts Twenty-fifth General Assembly) had these words, "and pay the cost of such appliance." These were dropped from the Code, and defendant contends that great significance should be attached thereto. The Code Commission, which recommended the elimination of these words, in the report, at page 62, said, "Much rewriting has been necessary to secure a uniform system and eliminate surplusage, but the material provisions of the law have been left unchanged." Such explanation was hardly necessary, for it is apparent that the words stricken out really added nothing to the section. The phrase "shall be compelled to interlock such crossing" of necessity means at the expense of him who is compelled to do so. To add "and pay the cost of the appliance" is clearly surplusage. But it is said that section 2064 covers the case and provides for an apportionment of the expense. That section reads as follows: "Apportionment of Costs. If in any case contemplated by the three preceding sections the crossing shall be of two railroads only, then the court shall not apportion to either less than one-third the cost, and if more than two roads are involved, the court shall not apportion to any one, less than two-thirds of an equal share of such cost." Clearly, this section does not mean that the costs and expenses should be apportioned in the same manner under each of the three preceding sections. Under section 2061 there is nothing to apportion save the costs of the proceedings, and, as section 2063 manifestly makes the company desiring to cross liable for the interlocking system, section 2064 surely has reference to apportion-

able costs. Section 2063 not only has reference to the crossing, but to the interlocking system. In order to cross, the defendant company was compelled to purchase the right, or secure it by condemnation proceedings, and, in addition thereto, on application of the company first procuring the right of way, could be compelled to put in the interlocking system. Section 2064 must be construed with reference to the other sections. As applied to one, it has its peculiar and appropriate meaning, and as applied to another a somewhat different, though no less appropriate, significance. In other words, it is the item or items of cost authorized by the particular section which are apportionable. Under section 2063 they are manifestly the costs of the proceedings and of maintaining the crossing after the interlocking system is established. These sections, like others, should be so construed as to bring harmony out of the whole. This interpretation, and no other, will do it. Moreover, section 2064 is negative in its terms, and, as there is no statute that directly imposes any part of the expense of the interlocking system on the corporation whose road is already in operation, courts have no power to require it by judicial construction. If such power exists, it is in the legislature in virtue of its police power, and not in the courts. The legislature has, it seems to us, clearly indicated that the corporation desiring to cross the established roadbed shall be at the expense of providing the interlocking apparatus, if the older company makes application therefor. Manifestly, this is the equitable construction, and, as there is considerable doubt about the constitutionality of a statute requiring the old company to bear any part of the expense of the system, we are constrained to hold that the legislature intended to avoid that doubt by making the company desiring to cross responsible for the expense of the interlocking system. *City of Albia v. Chicago, B. & Q. R. Co.,* 102 Iowa, 624. We have already referred to counsel's claim relating to the change in the language of the statute,

and need only add that the general rule of law is in accord with the suggestions of the Code Commission to the effect that a mere change in phraseology in the revision of a statute will not work a change in the law previously declared unless it clearly appears that such was the intention of the legislature. *In re Yates,* 4 Johns. 317; Endlich Interpretation of Statutes, section 384. This conclusion renders a consideration of the other points unnecessary and unimportant. The order of the district court is AFFIRMED.

SHERWIN, J., taking no part.