CEDAR RAPIDS HOTEL COMPANY, Appellee, v. FRED STIRM et al.,
Appellants.

No. 43491.

JULY 31, 1936.

Kelly, Shuttleworth & McManus, and Bennett Cullison, and
M. W. O'Rieley, for appellee.

G. K. Thompson and E. A. Fordyce, for appellants.

HAMILTON, J.—No question is raised as to pleadings and the
case was tried on a stipulation of facts whereby it is shown that
the lots in question, being the Montrose Hotel property in Cedar
Rapids, Iowa, were in 1931 assessed for taxation by the proper
officials at $304,700 on which valuation taxes were duly levied
for the years 1931 and 1932. These taxes for both years were
paid by plaintiff in the usual manner, voluntarily and without

protest. Tax receipts in regular form were issued and the taxes were shown fully satisfied on the records. Plaintiff made no objection to the 1931 assessment, either to the assessor or the local board of review. On July 16, 1933, plaintiff filed in the office of the State Board of Assessment and Review (hereinafter called "State Board") a petition, asking for correction and reduction of said 1931 assessment upon the ground that the assessment was excessive and discriminatory. A public hearing was had, evidence heard and investigation made, resulting in an order made by said State Board on December 28, 1933, reducing said assessment to $282,000 "on account correct percentage of depreciation was not allowed," and directing the county auditor of Linn county to correct assessment and tax records accordingly, of which order said auditor and treasurer of said county were duly informed, but upon demand failed to comply therewith. None of the defendants had knowledge or notice of said hearing and none of them were present, and had no legal opportunity to be heard.

Plaintiff petitioned the board of supervisors of said county to order the county auditor and treasurer to take the necessary steps to refund to plaintiff the sum of $1624.19, being the amount of the reduction in the amount of the tax computed on the reduced valuation. The board of supervisors refused, and said they would not grant the petition unless commanded so to do by writ of mandamus. The county treasurer has at all times had on hand an amount of money sufficient to pay said sum.

The defendants by answer alleged (a) that the proceedings relating to the taxation of the property involved were fully closed, taxes paid, receipts issued and the county auditor had no authority to correct the assessment; (b) that the taxes were not erroneously or illegally exacted and paid, but were legal when paid, (c) and were voluntarily paid without protest prior to the order of the State Board reducing said assessment; (d) that plaintiff made no objection to the assessment to the assessor or before the local board of review and hence waived its right if any it had for refund of any part of said taxes; (e) a plea of estoppel based on failure to object and voluntary payment with full knowledge of the facts that the millage levy fixed to raise the necessary amount of taxes for the assessment period was based on said assessed valuation and the payments of taxes were received by the defendants relying on the levy so based upon

such assessed valuation; (f) that the State Board is a necessary party.

The trial court found for the plaintiff and entered judgment and decree accordingly and defendants have appealed. Plaintiff bases its right to recover on the fact that there was an excessive assessment as found by the State Board, and that the taxes paid on the excess valuation were "erroneously or illegally exacted or paid" as that term is used in section 7235 of the 1935 Code.

This refund statute (section 7235, Code 1935) first appeared in the Code of 1860, section 762, and was published under the headlines, "Sale under improper levy—refund" and reads:

"In all cases where any person shall pay any tax, interest or costs, or any portion thereof that shall thereafter be found to be erroneous or illegal, whether the same be owing to erroneous or improper assessment, to the improper or irregular levying of the tax, to clerical or other errors or irregularities, the board of supervisors shall direct the treasurer to refund the same to the taxpayer—and in case any real property subject to taxation shall be sold for the payment of such erroneous tax, interest or costs as above mentioned, the error or irregularity in the tax may at any time be corrected as above provided, and shall not affect the validity of the sale or the right or title conveyed by the treasurer's deed; but the title so conveyed shall be deemed legal and valid provided that the property was subject to taxation for any of the purposes for which any portion of the taxes for which the land was sold, was levied, and that the taxes were not paid before the sale, and that the property had not been redeemed from sale."

This section is included in a general act, entitled "An Act in relation to revenue."

A careful study of this section in its original setting will, we think, lead one to the inevitable conclusion that the tax here mentioned which the board of supervisors is directed to order refunded to the taxpayer is a tax which, because of some error which might occur in any of the various ways mentioned in the section, was rendered invalid and uncollectible, and the word "erroneous" as used in this original section is used to include any and all the various and sundry ways such error, whereby the tax was rendered invalid, might occur. This is evidenced by

the expression "such erroneous tax \* \* \* above mentioned". "Above mentioned" includes all the various expressions which went before, including the word "illegal" and plainly indicates the legislature had in mind the same definition of this term contained in the pronouncement of this court in the case of Dickey v. County of Polk, 58 Iowa 287, 12 N. W. 290, and refers to a tax which "through errors or illegal proceedings" (no matter how they occurred or in what part of the proceedings) the taxpayer is not legally bound to pay. This section is not referring to the matter of equalization of the taxable values placed on property by the proper assessing officer. The legislature here had in mind some act or omission which occurred in some of the proceedings somewhere along the line in the assessment, in the levy, in the sale, whether it be clerical or otherwise, which invalidated the tax, and by reason thereof there rested on the taxpayer no legal obligation to pay, and which rendered the tax legally uncollectible and would invalidate the seizure or sale of property for the collection of the same. This likewise included an assessment for which there was an absolute want of authority to make.

The revised section, 870, Code of 1873, reads as follows:

"The board of supervisors shall direct the treasurer to refund to the taxpayer, any tax, or any portion of a tax, found to have been erroneously or illegally exacted or paid, with all interest and costs actually paid thereon, and in case any real property subject to taxation shall be sold for the payment of such erroneous tax, interest or costs as above mentioned, the error or irregularity in the tax may at any time be corrected as above provided, and shall not affect the validity of the sale, or the right or title conveyed by the treasurer's deed, if the property was subject to taxation for any of the purposes for which any portion of the taxes for which the land was sold was levied, and the taxes were not paid before the sale, and the property had not been redeemed from sale."

It remained in this form until the 1924 Code, when it was divided into sections 7235 and 7236 as it now remains in the 1935 Code.

It is the contention of counsel for appellee that this original section of the statute was never knowingly amended or changed by the general assembly and that its alteration in its present form was due to a condensation by the code revisioners of 1873 who

never called the attention of the legislature to the change made, and counsel argue that the meaning of section 7235 as revised in its present form, in so far as it is ambiguous, depends upon the meaning of the original statute, and contends that section 7235 as it now stands must be interpreted as if it contained the original wording, so long as that interpretation is consistent with the condensed section; and they cite the rule announced by this court in Eastwood v. Crane, 125 Iowa 707, 101 N. W. 481, to the effect that a change in the phraseology of a statute when compiled into a code does not change the meaning of the law unless it clearly appears that the legislature intended a change in meaning. Minneapolis & St. L. R. Co. v. Cedar Rapids, G. & N. W. R. Co., 114 Iowa 502, 87 N. W. 410. They further cite the rule of construction announced in Dennis v. Independent School District, 166 Iowa 744, 750, 148 N. W. 1007, 1009, "that changes made by a revision of the statutes will not be construed as altering the law, unless it is clear that such was the intention, and, if the revised statute is ambiguous or susceptible of two constructions, reference may be had to prior statutes for the purpose of ascertaining the intent of the legislature."

We have no fault to find with these pronouncements of the court, cited and relied upon by counsel for appellee, and we agree with counsel that the intention of the legislature as evidenced by the original act must under the circumstances mentioned be held to have been carried into the new section as revised and as is now contained in the present section 7235 of the Code, which is in the same identical language as section 870 of the Revision of 1873. But we are unable to agree with counsel for appellee in their interpretation of the intent of the legislature as found in the original statute, and in the interpretation counsel seeks to place on the words "erroneous assessment". The words "erroneous or illegal" as used in the original section had reference to an error invalidating the tax and rendering it legally uncollectible and if collected it became a tax "erroneously or illegally exacted or paid", which is the language or phraseology embodied in the revised section.

It must be kept in mind, we think, that laws relating to taxation are primarily enacted for the purpose of raising revenue. The beginning of the process is the listing of the property with the assessor and the affixing of values to all property by the assessor. This the assessor is required to do. The statute

says: "He shall personally affix values to all property assessed by him." Section 7106, Code 1935. And we think it has never been held by this or any other court that an error in judgment of the assessor, whereby in the judgment of some other taxing administrative body an inequality, or over or under valuation is found, rendered the levy or collection of the tax invalid. Neither has this court, in the absence of mistake or fraud, ever allowed a taxpayer to recover taxes voluntarily paid, based on such over or under valuation. To do so would render the whole system of taxation unstable. In matters of this kind the taxpayer has ever been required to seek relief before the administrative body to have the correction made before payment of the taxes. Macklot v. City of Davenport, 17 Iowa 379. In this case the defendant city assessed the plaintiff on $10,000 moneys and credits, whereas his debts, which should have been deducted, exceeded that amount. The court said:

"This case is one, therefore, of unjust over assessment and as to the extent of such excess, clearly erroneous."

But even so, it was held his remedy was before the local board of review for correction of the assessment, and that suit in equity by injunction would not lie, the court pointing out the distinction between this and a case where there is no jurisdiction or authority to levy the tax. In the latter injunction would lie to enjoin the collection of the tax because void.

The law as it existed in its original form, section 762, Code 1860, was considered by Wright, J., in Lauman v. County of Des Moines, 29 Iowa 310, a case involving bank stock held not subject to levy. The court said:

"*If this tax was illegal* (and this was thereafter so found and settled) then it was the duty of the board to refund the same." (Italics ours.)

The next case, Isbell v. Crawford County, 40 Iowa 102, followed the same reasoning. In that case, the tax was held invalid, because no proper levy, and the tax collected was held *illegal* and recovery was permitted.

The first case where this court undertook an interpretation or definition of the term "erroneously or illegally exacted or paid" as used in the refund statute, section 870, Code 1873, is Dickey v. County of Polk, 58 Iowa 287, 289, 12 N. W. 290, 291.

In that case the board of supervisors of the county, acting as a county board of equalization, raised the assessment upon the property of an entire township by adding ten per centum to the valuation of the property of each taxpayer, which the court held it was *without authority of law so to do,* and said:

"The action of the supervisors *being illegal, conferred no authority* upon the treasurer to collect the increased amount or sums added to the taxes by such action." (Italics ours.)

In commenting on section 870, Code, 1873, the court said:

"It cannot be doubted that an action under this provision will lie in a case wherein the supervisors are required to direct the treasurer to refund to the taxpayer taxes paid by him. This duty is imposed upon the supervisors where the taxes have been, in the language of the statute, 'erroneously or illegally exacted or paid.' This expression is in the most simple language and to our minds its meaning is obvious. It is this: whenever, through errors or illegal proceedings, the taxpayer is not legally bound to pay the taxes, their exaction by the treasurer or payment by the taxpayer, is erroneous or illegal. In other words, if the law does not require the payment of the taxes for any reasons based upon irregularities connected with their assessment or levy, their exaction by the treasurer is illegal. It follows that if the taxpayer, by proper proceedings, could have resisted the collection of the taxes and caused them to have been set aside, their collection by the treasurer is erroneous and illegal.

"If a taxpayer by failing to pursue a remedy for the correction of irregularities in the assessment and levy of taxes, waives or loses his right to resist the collection of the taxes, the exaction of payment by the treasurer is not illegal or erroneous. The irregularities having been waived, the assessment stands upon the tax books to be lawfully exacted and their collection enforced by the treasurer. In that case it could not be found that they were 'erroneously or illegally exacted or paid.' Thus an assessment which, for *certain reasons, is held to be erroneous,* must be corrected upon application to the board of equalization; if that remedy is not pursued the tax may be collected. Macklot v. City of Davenport, 17 Iowa 379. In case of erroneous assessment which is to be corrected by the board of equalization, no action will lie. * * *

"The *obvious purpose* of Code, section 870, is to give a remedy by action to recover for taxes paid *which the taxpayer could not have been compelled to pay.* * * *

"It is sufficient for us to know that the tax in question, as to the amount arising upon the increased assessment, *is unlawful*; that its collection *could not* have been *lawfully enforced* against plaintiff; that it was therefore 'erroneously and illegally exacted and paid;' and that in *such cases* the law provides for an action by the taxpayer to recover the amount he has been unlawfully required to pay. Code, section 870." (Italics ours.)

We next considered this refund section in Harris v. Fremont County, 63 Iowa 639, 19 N. W. 826. Under the facts in that case as the court construed them, there was involved what was termed an "erroneous" or "over-assessment", and the court said:

"The assessor did not lack authority to make the assessment, nor did he act in the matter beyond his jurisdiction. * * * In case of an erroneous assessment the statute provides an exclusive remedy by proceedings before the board of equalization from which an appeal may be taken. * * * The plaintiff, to support his action relies on Code section 870. * * * This court has held that, under this provision an action will lie to recover taxes paid, when there was want of authority to levy them or make the assessment. Dickey v. The County of Polk, 58 Iowa 287, 12 N. W. 290. *The section is not applicable* to the case under consideration, which involves *an erroneous assessment made in the exercise of lawful authority.* As the tax appeared regular upon the assessment roll and tax books, *it was not* 'erroneously or illegally exacted or paid'." (Italics ours.)

In the case of Leonard v. Madison County, 64 Iowa 418, 20 N. W. 472, a law action against the county, an assessment on shares of stock in a national bank was involved, plaintiff being at the time indebted for more than the value of the stock, but did not apprise the assessor, and waited until about two years after he had paid his taxes to begin his action for a refund. The court held there was no *previous error or illegality*, and hence recovery was denied, saying:

"If errors in the amount of assessments could be corrected *after* the payment of taxes by action to recover the taxes paid,

there would be no limit to the litigation that would arise.'' (Italics ours.)

This refund statute was again considered by this court in the case of Griswold L. & C. Co. v. County of Calhoun, 198 Iowa 1240, 1244, 201 N. W. 11, 12. In that case Justice Stevens, after reviewing the various cases involving the statutory provision now found in section 7235 of the Code, said:

''The real nub of the controversy is the right of appellants, under the facts admitted by the demurrer, to relief under section 1417. The question, therefore, is: What is meant by taxes found to have been erroneously or illegally exacted or paid, within the terms of this statute? Was the remedy of appellants, of appearing before the board of review with their grievances, and, upon failure to obtain relief, of appealing to the district court, exclusive of all others, or may they maintain the present action, notwithstanding that the irregularity complained of could have been remedied by that tribunal? The word 'erroneously' has no doubt been somewhat loosely used by this court, particularly in some of its early decisions.''

He then reviews the decisions and says:

''It will thus be seen that the tax involved in each of the above cases was either assessed and levied without authority, or upon property that was not taxable, or under a statute subsequently declared to be void, or by officers having no authority whatever to do the act complained of.''

He then quotes from Dickey v. Polk County, supra, as follows:

'' 'If a taxpayer, by failing to pursue a remedy for the correction of irregularities in the assessment and levy of taxes, waives or loses his right to resist the collection of the taxes, the exaction of payment by the treasurer is not illegal or erroneous. The irregularities having been waived, the assessment stands upon the tax books to be lawfully exacted, and their collection enforced by the treasurer. In that case, it could not be found that they were 'erroneously or illegally exacted or paid'. Thus an assessment which, for certain reasons, is held to be erroneous, must be corrected upon application to the board of equalization; if that remedy is not pursued, the tax may be collected. Macklot

v. City of Davenport, 17 Iowa 379. In case of erroneous assessment which is to be corrected by the board of equalization, no action will lie. But when the error or illegality which invalidates a tax is found in the action of such board itself, or in the want of authority to levy the tax or to make the assessment, whereby the tax is not a lawful charge against the taxpayer, his remedy is not confined to proceedings before the board of equalization. * * *'

"We further said, in Van Wagenen v. Supervisors of Lyon County, 74 Iowa 716, 39 N. W. 105, that:

" 'If a person pays taxes without availing himself of the remedy provided by law, it cannot be regarded as an illegal exaction, provided the power and jurisdiction existed to make the assessment and levy.' " (Italics ours.)

It will thus be seen that our prior holdings relate almost entirely to an absolutely void tax. Prior to the enactment of this refund statute, a taxpayer had no remedy by which he could recover a refund of even an absolutely void tax which had been voluntarily paid. If he discovered the matter which rendered the tax void and hence uncollectible before payment of the tax, equity would enjoin its collection. Woodbine Savings Bank v. Tyler, 181 Iowa 1389, 162 N. W. 590. Since the passage of the refund statute an absolutely void tax may be recovered even after payment of the tax, whether voluntarily or involuntarily paid. Slimmer v. Chickasaw County, 140 Iowa 448, 118 N. W. 779, 17 Ann. Cas. 1028.

But there is still that other class of taxes included in the term "erroneously or illegally exacted or paid" as used in the refund statute to which general reference has already been made. And that, in the opinion of the writer of this opinion, was the particular class the legislature had in mind, namely, a tax based on an assessment and levy which, had they been properly made, would have been valid, but because of some act or omission to act, some clerical error or irregularity in some of the proceedings, was rendered invalid and uncollectible. In such case, the action by mandamus under section 7235 is the exclusive remedy. Steele v. Madison County, 198 Iowa 902, 200 N. W. 330. This case involved an excessive assessment of national bank stock by subjecting it to a 155-mill consolidated levy instead of the five-mill rate applied to moneys and credits, and the taxes were paid under

protest, and in the first instance complaint was made to the board of review. Des Moines Nat. Bank v. Fairweather, 191 Iowa 1240, 181 N. W. 459, 184 N. W. 313.

This was the very mischief to be remedied by the enactment of the refund statute. The legislature knew there was an adequate remedy already on the statute books whereby over assessment or wrongful classification could be corrected by way of complaint to the board of review and appeal to the court. The lawmakers knew this court had consistently held that the remedy thus provided was exclusive. There is nothing in section 7235 indicative that they meant to change or alter this rule laid down by the court. If this section (7235) was inapplicable when enacted, what has taken place to make it applicable now?

Counsel for appellee point out that since the State Board is now clothed with power to correct assessments, and since the only limitation as to time is the five-year limitation found in the act, and since both statutes, sections 7235 and 6943-c27, Code, 1935, relate to the matter of taxation, they are in pari materia and should be construed together, and by implication, following well-recognized rules of statutory construction and the wording of the new statute, we should now hold that the state board may correct an assessment by lowering the assessed valuation at any time within five years from date of the levy, and notwithstanding the taxes have been voluntarily paid, the excess amount due to the over-valuation is recoverable under this refund statute. If appellee's theory is sound, it would be equally so if the limitation were ten or twenty years instead of five. Let us suppose the five-year limitation had been omitted. The state Board, if the law were still valid, would still have the same power now possessed. Would counsel contend that plaintiff had a right of action notwithstanding the fact that no complaint was made or filed before either the local board of review or state Board until more than two years after the assessment, and in the meantime plaintiff, with full knowledge of all the facts, had paid the taxes voluntarily and obtained a receipt and its property stood discharged of the tax lien?

In the case of First National Bank v. Hayes, 186 Iowa 892, 171 N. W. 715, and First National Bank v. Anderson, 196 Iowa 587, 192 N. W. 6, the court had under consideration statutory provisions relating to the matter of the auditor correcting errors in the assessment or tax list and assessing omitted property. The

statute contained no limitation clause, and the court held that "the authority of the auditor to correct the tax list is not expressly or impliedly limited to the time in which he is required to deliver the same to the treasurer but continues until the tax *has been paid or otherwise legally discharged.*" (Italics ours.) First National Bank v. Anderson, 196 Iowa 587, 594, 192 N. W. 6, 10.

This court has repeatedly held that the tax based on an excessive valuation is not "erroneously or illegally exacted or paid" where the taxpayer has failed to make use of the administrative body in having the correction made at the proper time. His failure to take advantage of the means provided by the statute for correcting an erroneous assessment of this character amounts to a waiver. So long as the taxes remain unpaid and within the five-year period of limitation on proper application, the assessment may be corrected by the state board of assessment and review, but this remedy must be resorted to (in the case of an otherwise valid but over or excessive assessment) before voluntary payment of the tax. The adding of the five-year period of limitation added nothing to the power or authority of the state board to make the correction in the assessment. Plaintiff's proper procedure under the facts in this case, as we conceive the law to be, would be first to make its complaint either to the local board of review or the state board. Failing to obtain relief in this manner, the statute provides for an appeal to the district court. In the meantime, if the taxes based upon the assessment of which complaint is made become due and threatened with interest and penalties, it could do one of two things: tender an amount sufficient to cover the taxes due on a valuation finally fixed upon as correct by the court, or pay the entire taxes under protest, and after, if and when it is found by the court that the assessment was erroneous as being excessive, bring its action by mandamus to recover the excess tax under section 7235 of the Code. This is the procedure that was followed in the case of Des Moines National Bank v. Fairweather, 191 Iowa 1240, 181 N. W. 459, 184 N. W. 313, referred to in Steele v. Madison County, 198 Iowa 902, 200 N. W. 330, where an erroneous—in the sense that it was excessive—assessment or levy was involved.

Under appellee's theory, if the limitation in the statute were ten years instead of five, any taxpayer anywhere in the state of Iowa could voluntarily acquiesce in the assessment and levy of

218

the tax, voluntarily pay the same, obtain his receipt and have his tax lien discharged, and then wait any number of years, just so it was within the statute of limitations, before applying to the administrative board for a correction of an error as to the valuation only, of which he had full knowledge at all times before and after voluntarily paying the tax, and if at such remote date he obtained an order changing the assessed valuation, as in the present case, he could bring his action to recover the same as a tax ''erroneously or illegally exacted or paid''. Such a rule of construction would render the basis of taxation as unstable as the shifting sands or the tides of the ocean. If the law-making body had this in mind when it enacted section 6943-c27, it will have to express such intention in clear and unmistakable language and leave nothing to implication or intendment.

The judgment and decree of the trial court must be and is hereby reversed and remanded with instructions to enter a decree in harmony with this opinion.—Reversed and remanded.

PARSONS, C. J., and KINTZINGER, MITCHELL, STIGER, DONEGAN, and RICHARDS, JJ., concur.