CHARLES HEWITT & SONS COMPANY, a Corporation, Appellee, v. CHARLES KELLER et al., Supervisors of Polk County, Appellants.

No. 43896.

SEPTEMBER 28, 1937.

Carl A. Burkman, Charles Hutchinson, Howard M. Hall, Vernon R. Seeburger, and Ronald L. Ryan, for appellants.

George A. Kern, Stanton S. Faville, and John Connolly, Jr., for appellee.

SAGER, J.—There is no substantial dispute as to overpayment of the tax; in fact, the defendants-appellants, who constitute the board of supervisors of Polk county and who will hereafter be referred to as the board, tacitly, if not expressly, admit that the provisions of section 7164 of the Code were ignored and that as a result plaintiff-appellee was called upon to and did pay at least the amount for which decree was rendered in its favor in excess of the amount due if the deduction provided for in the cited statute had been made.

We pass for the moment the question of whether the cited statute is "vague, indefinite, and impossible in its operation and therefore unworkable," as appellants charge.

The greater part of the arguments of the parties on both sides is devoted to a discussion as to whether this section of the statute is unconstitutional. This raises the question whether and by what authority the board may raise this issue. There is admittedly a conflict in the authorities, with the weight on the side of the proposition that appellants are not in a position to do

so. While the question has never been before this court in exactly the same way that it comes up now, we have on other occasions expressed ourselves as holding against the appellants' contention, this, on the principle that ministerial officers may not challenge the competence of the legislature to enact the very statutes under which these officers act. Scott County v. Johnson, 209 Iowa 213, at pages 218, 219, 220, 222 N. W. 378, discusses this proposition. That case is not parallel in its facts, in that the county in that case sought to prevent the defendants from applying the interest on county funds to a state sinking fund to provide for the payment of public funds deposited in a bank which became insolvent. Evans, J., in the course of this opinion, propounded this question (209 Iowa 213, 218, 222 N. W. 378, 380):

"Does the plaintiff, as a county, have a proprietary right to demand as its own property all interest to be collected upon county deposits under the foregoing statutes? And is such right superior, on constitutional grounds, to the power of the legislature to enact otherwise?"

After discussing the section under which the interest in controversy would be derived (sec. 7404, C., 1924), the court declared that if the county had a vested interest in these funds a like interest would be created in a school corporation; and proceeded (209 Iowa 213, at page 221, 222 N .W. 378, 381):

"We have held definitely that a school corporation cannot challenge the constitutionality of a legislative act. Waddell v. Board of Directors, 190 Iowa 400, 175 N. W. 65. We have held also indirectly that a county is under the same disability. McSurely v. McGrew, 140 Iowa 163, 118 N. W. 415, 132 Am. St. Rep. 248. And later we have held directly to such effect. Iowa Life Ins. Co. v. Board of Supervisors, 190 Iowa 777, 180 N. W. 721. These authorities are quite conclusive against the plaintiff's capacity to challenge this legislation."

Further in the opinion, 209 Iowa 213, at page 222, 222 N. W. 378, 382, appears this language (from McSurely v. McGrew, 140 Iowa 163, 118 N. W. 415, 132 Am. St. Rep. 248):

"A county, while a body corporate under our law, is a subdivision of the state, created for administrative and other public

purposes, owes its creation to the state, and is subject at all times to legislative control and change. No citizen has any vested right in or to its revenues.''

The opinion goes on to examine the various cases touching this subject, and we are under no necessity of repeating such discussion.

Since the controversy before us on this appeal arises from the act of the county auditor of Polk county, it may be of interest to note our expression as to that officer's status. Morling, C. J., delivering the opinion in Iowa Nat. Bank v. Stewart, 214 Iowa 1229, at page 1240, 232 N. W. 445, 451, said:

''The assessments and the rate to be paid by the several taxpayers as between themselves are complete and are determined when the assessor returns the assessment rolls and assessment book to the county auditor, subject to class modification by the county and state boards of review and to change by the court if appeal has been taken. The remainder of the process of taxation is one of collection and enforcement of the taxes as so assessed. This is ministerial. The auditor's duty is to transcribe the assessments into the tax book and make the necessary computations and extensions and clerical corrections. This duty is merely clerical and ministerial. First National Bank v. Burke, 201 Iowa 994, 196 N. W. 287; First National Bank v. Hayes, 186 Iowa 892, 171 N. W. 715; Ridley v. Doughty, 77 Iowa 226, 42 N. W. 178, [Id.] 85 Iowa 418, 52 N. W. 350; Milwaukee & St. Paul Railroad Co. v. Kossuth County, 41 Iowa 57, 66; Cooley Taxation (4th Ed.), sec. 1167; People v. Pittsburgh, 147 N. E. 492, 316 Ill. 410. The auditor's act in changing the classification and assessment of the property of the competing corporations was without power and void. Fort Madison Sec. Co. v. Maxwell, 202 Iowa 1346, 212 N. W. 131.''

An interesting, though of course not controlling, decision on the subject as to how far public officials may question the constitutionality of a statute under which they operate is State v. Steele County Board of Com'rs., 181 Minn. 427, 232 N. W. 737, 71 A. L. R. 1190. We quote briefly therefrom (181 Minn. 427, 232 N. W. at page 737, 71 A. L. R. 1190):

''It is the well-established law that a litigant may be heard to question the constitutionality of a statute only when and so

far as it is being or is about to be applied to his disadvantage. He must show injury." [Citing cases.]

The opinion in this case contains this further instructive language (181 Minn. 427, 232 N. W. 737, at page 738, 71 A. L. R. 1190):

"An unconstitutional statute binds no one. There is, however, another equally well established and recognized rule that a statute is presumed by the court to be valid until its unconstitutionality is made to plainly appear.

"Upon the theory that the law is a nullity, some courts hold that the official may raise the question of the constitutionality of the law. [Citing cases.] In the Van Horn case [46 Neb. 62, 64 N. W. 365] it is suggested that the official charged with such ministerial duty may raise the question because his oath of office compels him to support the Constitution. The answer to that course of reasoning is that his oath does not require him to obey the Constitution as he decides, but as judicially determined.

"The authorities are in conflict. The better doctrine, supported by the weight of authority, is that an official so charged with the performance of a ministerial duty will not be allowed to question the constitutionality of such a law. This rule is based largely upon governmental policy. It rests upon the theory that the court should accept as final the acts of the Legislature and discourage attacks upon them except where necessary to protect the private interests of the individual asserting invalidity and peculiarly and particularly affected thereby. Officials acting ministerially are not clothed with judicial authority. To permit them to refuse to perform their duty on the ground that the commanding law is unconstitutional would be a dangerous practice, in that they who have only ministerial duties would be raising questions affecting the rights of third persons while they themselves would have no direct interest in the question and could not in any event be made responsible. Under our present system, lawsuits may be prosecuted or defended by the real party in interest. Such party alone has a right to make a record which will render the question litigated res adjudicata. The respondents here have no greater or different interest in the constitutionality of this law than any other citizen. To permit officials charged with such a duty to raise such a question may

not only be a hazardous proceeding to themselves but productive of great inconvenience to the public. Their authority is the command of the statute, and it is the limit of their power."

We pass no opinion on the question whether an exception may be made as pointed out in the last paragraph but one of that opinion. That may await the time it comes before us in a proper case.

See, also, State of Florida v. State Board, 84 Fla. 592, 94 So. 681, 30 A. L. R. 362.

These quotations seem to us to indicate the only rule which is logical, or even tolerable, in the administration of our laws. As appears from one of them, some of the authorities base their decisions upon the ground of public policy, but the writer of this opinion believes that it can and should be predicated upon even broader and more substantial grounds, and they are these: Counties and other municipal corporations are, of course, the creatures of the legislature; they exist by reason of statutes enacted within the power of the legislature, and we see no sound basis upon which a ministerial (or, for that matter, any other) office may question the laws of its being. The creature is not greater than its creator, and may not question that power which brought it into existence and set the bounds of its capacities.

But it is urged by the appellant board that section 7164 of the Code is vague and unworkable, as well as being unconstitutional. This contention supports rather than undermines the decree of the trial court, because it proves, if it proves anything, that the county auditor could have no personal interest or sustain a personal loss if he and other county auditors had been asked to do the impossible, and, if the statute, as well as being unworkable, is unconstitutional on one or more of the grounds alleged, the ministerial officer still has no ground of complaint. If the law was workable, as the trial court held, then it was the duty of the board and its auditor to observe it and not attempt to substitute their views of what should be done in the premises for what the legislature said should be done.

If it be desired to pursue this inquiry further, numerous cases on both sides of the question will be found in 12 Corpus Juris, Const. L., secs. 183, 184.

■■■ The appellant board next complains that appellee's remedy was not to proceed by application to the district court,

but that its remedy should have been by way of appeal to the state board of assessment and review. In support of this view appellants call attention to section 6943-c27 of the Code. A reading of this section, subdivision 9a, is sufficient to show the fallacy of this contention. The part of the section bearing upon the question before us reads:

"To correct errors, irregularities, or omissions in assessments of individual taxpayers by adding to the tax list any omitted property or by raising, lowering, or abating an assessment found to be erroneous or excessive; * * *."

In the instant case there is no question of error in the assessment, and the board in no event could have acted to correct the admitted failure of the county auditor to compute the taxes or assessments already made and against which there had been no objection or protest.

■■■ The last proposition urged in behalf of the appellant board is that a taxpayer who voluntarily and not under protest pays taxes is barred from recovering on same. With this statement as an abstract proposition of law we have no quarrel, but it has no application here, and the cases cited do not support appellants' contention as it arises in the case at bar.

The first of the cases relied upon by appellants is Cedar Rapids Hotel Co. v. Stirm, 222 Iowa 206, 268 N. W. 562. On examination this will be found to involve an excessive assessment due to the fact that an incorrect percentage of depreciation had been allowed. Plaintiff paid the tax and later sought to recover and recovery was denied. That case not only analyzes the various statutes heretofore and presently existing on this subject, but discusses many if not all of the cases which have arisen in this state upon that question. It does not hold that the taxpayer who has paid a tax erroneously and illegally (as distinguished from irregularly) exacted may not recover, even though he did not make the payment under protest.

Slimmer v. Chickasaw County, 140 Iowa 448, 118 N. W. 779, 17 Ann. Cas. 1028, is clearly not in support of appellants' theory. In that case it appeared that plaintiff had voluntarily submitted his property to the jurisdiction of a tax officer and asked that it be assessed. It was held that he could not thereafter claim that it was not assessable. The opinion, among other

things, said (140 Iowa 448, at page 453, 118 N. W. 779, 780, 17 Ann. Cas. 1028):

"The action is bottomed upon section 1417 of the Code, which, so far as material, reads as follows: 'The board of supervisors shall direct the treasurer to refund to the taxpayer any tax or portion thereof found to have been erroneously or illegally exacted or paid, with all interest and costs actually paid thereon.' Under this section it has been held in many cases that a taxpayer may by action recover back taxes erroneously or illegally exacted or paid, even though paid voluntarily and without protest. Richards v. Wapello County, 48 Iowa 507; Dickey v. Polk County, 58 Iowa 287, 12 N. W. 290; Lauman v. Des Moines, 29 Iowa 310. At common law no such action would lie, for the reason that taxes voluntarily paid, although erroneous or illegal, could not be recovered back. Lindsey v. Boone Co., 92 Iowa 86, 60 N. W. 173; Hawkeye L. & B. Co. v. Marion, 110 Iowa 468, 81 N. W. 718; Newcomb v. Davenport, 86 Iowa 291, 53 N. W. 232. So that, if there be any right of action at all, it exists by reason of the statute quoted."

Code 1897, section 1417 referred to in this quotation appears now as section 7235, under which appellee claimed its refund.

Without pointing out that the distinction in the other cases cited by appellants at this point it is sufficient to say that all of them are readily distinguishable in principle from the case at bar.

From the foregoing it follows that we believe the decree of the trial court was right, and that it should be, and it is, affirmed.—Affirmed.

All Judges concur.